# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## WARNER MOORE, JR., v. EDNA E. CRUTCHFIELD, ADMINISTRATRIX OF MARY CRUTCHFIELD MOORE, DECEASED.

### March 15, 1923.

1. ALIMONY—*Contracts for Payment of Alimony—Contract for Payment of a Certain Sum in Lieu of Alimony.*—While the validity of contracts for the payment of alimony, as such, made by the parties during the pendency of a divorce suit has been questioned, yet a contract for the payment of a certain sum of money in lieu of alimony will be sustained.

2. CONTRACTS—*Termination of Contract—Death of Party to Contract.*—The general rule is that the death of a party does not terminate a contract, if it is not of a personal nature. And the facts and circumstances of each particular case will be taken into consideration in determining whether the contract is purely personal in its nature, and therefore terminated by the death of the party.

3. ALIMONY—*Decree for Alimony—Decree Approving a Settlement Between the Parties.*—A decree of court, approving a contract between parties providing for payments in lieu of alimony and for the settlement of the property rights of the parties, is not a decree for alimony, and the court has no jurisdiction in the divorce suit to enforce compliance with the contract, nor to alter its terms upon subsequent application of one of the parties.

4. ALIMONY—*Contract to Pay a Wife a Certain Sum in Lieu of Alimony— Contracts—Impossibility—Death of Wife—Case at Bar.*—In the instant case, a suit for a divorce by a wife, the wife prayed for a divorce *a mensa*, and at the end of three years for a divorce from the bonds of matrimony. Shortly before a decree was entered in the divorce suit the husband and wife entered into an agreement under which the husband was to pay the wife the sum of $25 a month for a period of three years, and upon final adjudication in the divorce suit to pay her the sum of $5,000 in full settlement of all her property rights by reason of the marriage. A decree was entered granting the complainant a divorce from bed and board and the decree contained a clause approving the settlement as to alimony and property rights.

Thereafter, while the divorce suit was still on the docket of the court, the wife died. Defendant contended that although the death of the wife would not have the same effect as it would have had in the case of an ordinary decree for alimony, yet the contract became impossible because of her death, as the $5,000 was only to be paid when a final adjudication was had in the divorce case.

*Held:* That the promise to pay the $5,000 was an absolute promise, its payment being postponed until a certain time; that the death of the wife rendered the arrival of that time in the exact terms of the agreement impossible, but that the death of the wife was not to be given the effect of a default on her part. The wife having died, preventing the final adjudication of the divorce case, which the parties had in mind, the right to the payment of the $5,000 became fixed after the lapse of a reasonable time; the defendant having received the entire consideration for the promise of payment.

Error to a judgment of the Law and Equity Court of the city of Richmond. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*S. S. P. Patteson* and *H. M. Smith, Jr.*, for the plaintiff in error.

*Gunn & Mathews*, for the defendant in error.

WEST, J., delivered the opinion of the court.

Warner Moore, Jr., complains of a judgment rendered against him on February 12, 1921, in favor of Edna E. Crutchfield, administratrix of Mary Crutchfield Moore, deceased, for the sum of $5,070.00 with interest thereon from the 20th day of November, 1920, till paid.

The admitted facts are these:

On October 6, 1917, Warner Moore, Jr., and Mary Crutchfield, of Richmond, Virginia, were married in the

city of Washington, D. C.   Moore, at the time of the marriage, was a student in the Officers' Training Camp at Fort Myer, Va., where he afterwards received a com-. mission in the army of the United States, and was assigned to duty with the flying corps in France.   On October 28, 1917, Moore sailed for France and never thereafter resumed his marital relations or contributed to the support of his wife, until after she brought suit against him for a divorce on the ground of desertion. In her bill of complaint she prayed for a divorce *a mensa et thoro*, and at the end of three years a divorce from the bonds of matrimony.   On her motion for alimony and counsel fees *pendente lite*, the court, on April 11, 1919, decreed that Warner Moore, Jr., should pay to her counsel, Gunn & Matthews, on account of their fee, $250.00, and to the complainant "the sum of $450.00, representing $25.00 per month from November, 1917, to April, 1919, inclusive, the desertion being alleged to have commenced in November, 1917; and the said defendant to pay unto the said plaintiff the sum of $25.00 per month, quarterly, beginning on the 1st of July, 1919, and continuing until the further order of this court."

The defendant filed no answer to the bill of complaint, nor any evidence in the case, but complied with the terms of the decree aforesaid requiring him to pay alimony and suit money.

On October 22, 1919, the case was heard on the papers formerly read and the depositions of witnesses duly taken and returned to court, and a decree was entered granting the complainant a divorce from bed and board. This decree also contained the following clause:

"And it appearing that all property interests and alimony have been fully settled and agreed upon between the plaintiff and defendant, as appears from an agree-

ment filed herewith marked Exhibit 2, the court doth, in all respects, approve said settlement as to the said alimony and property rights of the respective parties hereto, provided, however, that the said defendant shall, in addition thereto, pay the costs of this suit, and the fee of $500.00 to Gunn & Mathews, counsel for the plaintiff.''

The agreement dated October 20, 1919, referred to in the said decree as "Exhibit 2," reads as follows:

"The undersigned, Warner Moore, Jr., and his wife, Mary Crutchfield Moore, having ceased to live together as man and wife, without in any way acknowledging upon whom is the fault or condoning the conduct of the one or the other, which has led to the existing state of affairs, or preventing any consequences which may follow, or right which may arise to either party if such status shall continue, desire to settle the property rights of the parties hereto.    With this view they have entered into the following agreement:

"First: In lieu of all claims for support and maintenance, which the said Mary Crutchfield Moore has, or might or could have, or for alimony, she agrees to accept in full settlement of all her property rights, by reason of the said marriage, the sum of twenty-five ($25.00) dollars per month from November 1, 1917, continuing for a period of three years thereafter, and upon final adjudication of this cause, the said Warner Moore, Jr., is to pay to her, or her counsel, the sum of five thousand ($5,000.00) dollars in cash.''

Mary Crutchfield Moore died on the 25th day of January, 1920, while the divorce suit was still on the docket of the court.    At her death the current amount of alimony due on the monthly payments of $25.00 was $70.42.    After her death this suit was revived in the name of the said Edna E. Crutchfield, her administratrix, and the $70.42, aforesaid, was tendered to her.

She declined to receive it and on April 2, 1920, filed her petition in the cause and claimed that the real amount due was the sum of $5,000.00, provided for in the contract heretofore referred to as "Exhibit 2," and not $70.42. Moore filed an answer to said petition in which he contended that he only owed the $70.42 and the costs of the suit, as the agreement, marked "Exhibit 2," except to this extent, was made null and void by the death of said Mary Crutchfield Moore, and was now impossible to be performed. The case made by the petition and answer was argued and submitted and dismissed by the court for the want of jurisdiction.

Thereupon the administratrix instituted this action at law against the defendant, Warner Moore, Jr., for $5,300.00, with interest from November 1, 1920, till paid, claimed to be due under the agreement of October 20, 1919, aforesaid. The case was heard by the court without a jury. The evidence in the divorce suit was submitted as evidence in the common law suit along with some other evidence and the court entered a judgment against Moore for the sum of $5,070.00, with interest from November 20, 1920, till paid.

The plaintiff in error relies on two assignments of error. He contends, first, that the court erred in holding that there was a binding agreement which made him liable for $5,000.00 on the personal contract of Mary Crutchfield Moore, which had become impossible of performance by reason of her death, she being the only person who could perform the same, and in entering judgment against him therefor.

He contends, second, that the court erred in holding that such a contract survived to the personal representative of Mary Crutchfield Moore.

These two assignments will be considered together.

[1] The validity of contracts for the payment of ali-

mony, as such, made by the parties during the pendency of a divorce suit has been often questioned.    But a contract for the payment of a certain sum of money in lieu of alimony was sustained by this court in *Newman* v. *McComb*, 112 Va. 408, 71 S. E. 624.

The plaintiff in error admits in his petition that this action is based on a valid contract in relation to alimony but contends that it has become impossible of performance by the death of Mary Crutchfield Moore.

[2] The general rule is that the death of a party does not terminate a contract, if it is not of a personal nature.    And the facts and circumstances of each particular case will be taken into consideration in determining whether the contract is purely personal in its nature, and therefore terminated by the death of the party. The contract in the instant case was entered into just prior to the entry of the decree of October 22, 1919, and evidently for the purpose of avoiding any contest over allowances to the wife out of the husband's estate; and the court simply approved the agreement without in terms decreeing any alimony in favor of the wife.  Since the parties had a legal right, under the circumstances of this case, to make the contract, and the payments thereunder are not to be regarded as alimony decreed by the court, it follows that the death of the wife should have only such effect as it would have under the terms of the contract itself.    It appears from the testimony of witness Gunn, who afterwards drew the agreement, that the parties were negotiating with a view of settling the whole matter of the wife's interest in her husband's estate by the payment of a lump sum in cash, and the conclusion is irresistible that the $5,000.00 was to be paid for the considerations shown in the contract.

The Honorable Beverly T. Crump, who decided the case in the trial court, filed a written opinion, a copy of

which is found in the record, pages 10 to 14, inclusive. As we agree with his conclusions and his reasons therefor, we hereby adopt as a part of the opinion of the court that portion of his opinion which follows:

"It is further argued on behalf of the defendant that, although the death of the wife would not have the same effect as it would have had in the case of an ordinary decree for alimony, yet the contract became impossible of performance because of her death, as the $5,000.00 was only to be paid when a final adjudication was had in the divorce case, that is when the wife should apply under the statute to enlarge the decree from bed and board into a decree of divorce from the bonds of matrimony, citing as authorities, 6 R. C. L., p. 1009, and *Lorillard* v. *Clyde*, 142 N. Y. 456, 37 N. E. 489, 24 L. R. A., p. 113.   The authorities cited refer to agreements unexecuted on the part of the person dying, that is where services were to be performed or some acts were to be done by the deceased, and performance was rendered impossible by the death of the decedent, the promissor.   See 3 Williston on Contracts, secs. 1935, 1936, 1945.

"Here, however, the contract has been fully executed by the wife, the consideration rendered by her being *in praesenti*.   If the contract be so construed as to make its obligatory force dependent upon an absolute condition that the wife should apply in the future for a divorce from the bond of matrimony so that the money she was to receive was in consideration of an agreement that she would do so, I rather think the contract would be against public policy and void.   But it is manifest that the eminent counsel for the parties drew and approved the contract in perfectly good faith, and to put an end to any controversy over alimony or the property rights of the parties then or in the future.   In

*Gum* v. *Gum*, 122 Va. 32, 94 S. E. 177, it was held that under the statutes of Virginia the court in granting divorce from bed and board, had jurisdiction to extinguish all marital rights of each party in both existing and subsequently acquired real and personal property of the other, including dower, and distributive share in the personalty in case of death; but that this jurisdiction must be actually exercised in order that the marital rights of either party in the property of the other should be affected; that if, in a decree of divorce from bed and board the separation is not made perpetual and the marital rights of the parties are not extinguished, then the wife still has her dower interest in the husband's real estate whether acquired before or after the divorce, and her distributive share in his personalty, if she survive him.    The court in the case out of which this controversy originated was not asked to decree upon these subjects.    By the contract in question the wife agreed to surrender and waive all her marital rights of every character present or future, in any property or estate of the husband.    And it is evident that the promise to pay the sum of $5,000.00 was part of the consideration to be paid by the husband for this surrender, and that it was not, in a legal sense, conditional.    The parties of course did not anticipate the death of the wife, and it was in their minds that she would apply for the enlargement of the divorce decree at the proper time.    The wife having granted and given a consideration, which vested in her the right to demand the payment of the $5,000.00 upon the final adjudication of the cause, and the husband having at the time the contract was executed received the full benefit of the consideration, I do not think that the rendition of a final fulfillment of the contract, impossible by the death of the wife, releases the husband from his promise to pay and it follows that she

having died the promise can be enforced by her administratrix.

"Several months have elapsed since the death of the wife and the qualification of the administratrix. It is also to be noted that the three years from the date of the desertion fixed in the divorce decree had also expired when this proceeding was instituted.

"The decree of divorce from bed and board separating the wife from the defendant here does not undertake to direct that the husband shall pay the wife alimony.

"There is no alimony awarded or allowed the wife. The fact that the court approved the agreement made between the parties partly in lieu of alimony does not make the order of court a decree for alimony. There is nothing in that decree that can give it the force and effect of a judgment against the husband for the amounts agreed by him in the contract to be paid to the wife, a result that follows from the usual decree ordering payment of alimony. (*Isaacs* v. *Isaacs*, 117 Va. 730, 86 S. E. 105, L. R. A. 1916B, 648.)

[3] "A decree of court approving a contract between parties providing for payments in lieu of alimony and for the settlement of the property rights of the parties, is not a decree for alimony, and the court has no jurisdiction in the divorce suit to enforce compliance with the contract nor to alter its terms upon subsequent application of one of the parties. 19 Corpus Juris, p. 251 and notes; *Ibid*, p. 340; *Pryor* v. *Pryor*, 88 Ark. 302, 114 S. W. 700, 129 Am. St. Rep., p. 102.

[4] "My conclusion is that the promise to pay the sum of $5,000.00 was an absolute promise, its payment being postponed till a certain time, that the death of the wife has rendered the arrival of that time in the exact terms of the agreement impossible, but the death of the wife is not to be given the effect of a default on her part,.

or of interference with the obligations of the contract by misconduct on her part. In such a case the wife having died, preventing that final adjudication of the divorce case which the parties had in mind, the right to the payment of the $5,000.00 became fixed after the lapse of a reasonable time, the defendant here having received the entire consideration for the promise of payment.

"The substance and essence of the contract is contained in the surrender by the wife of all her existing marital rights in the property of her husband present or future, including the interests therein the law would give her if she survived him, in consideration of the payment by him of the installments and of the sum of $5,000.00, the latter sum to be paid at a time contemplated by the parties as natural to arrive in the course of time. Under such circumstances inevitable accident will not excuse performance of a contract, where its essential purposes are still capable of accomplishment, and consideration has been received by the party sought to be held liable.

"It was so held in *Board of Education* v. *Townsend*, 63 Ohio St. 514, 59 N. E. 223, 52 L. R. A. 868.

"Judgment may be entered in favor of the plaintiff for the amount due the decedent under the contract, viz.: for $5,070.00 with interest from November 20, 1920."

The judgment will be affirmed.

*Affirmed.*