# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢

MOLLIE J. DEHART V. I. C. DEHART, ET ALS.

June 13, 1935.

Present, All the Justices.

456

The opinion states the case.

*R. E. Woolwine* and *Hoge & Austin,* for the appellant.

*F. P. Burton, Hooker & Hooker* and *W. L. Joyce,* for the appellees.

CAMPBELL, C. J., delivered the opinion of the court.

This appeal involves a controversy between Mollie J. DeHart, appellant, who was the wife of I. C. DeHart, and I. C. DeHart, Patrick County National Bank, The First National Bank of Stuart, Virginia, H. M. Moir, F. P. Burton, trustee, J. M. Hooker, trustee, Alice Thompson DeHart and J. H. DeHart, appellees, as to the alleged priority of liens against the real estate of I. C. DeHart.

Appellant and I. C. DeHart were married on the 14th day of May, 1891. They lived together until the 2nd day of February, 1928, when, as shown by the record, I. C. DeHart left his home, and marital relations were never resumed.

On the 11th of February, 1931, appellant and DeHart entered into this agreement:

"This agreement, made this the 11th day of February, 1931, by and between I. C. DeHart, party of the first part, and Mollie J. DeHart, party of the second part, both of Patrick county, Virginia.

"Witnesseth: That, whereas, unfortunate differences have arisen between the parties hereto, who are husband and wife of each other; and, whereas, in consequence of said differences, they have, for some time past, lived separate and apart from each other, and intend to so live separate and apart from each other for the remainder of their natural lives:

"Now, therefore, in consideration of the premises, and for the purpose of settling the property rights of the parties hereto, said parties do hereby covenant and agree with each other as follows:

"(1) The party of the first part doth hereby agree to pay the party of the second part the following sums of money and to deliver to her the following personal property:

"(a) The sum of fifty ($50) dollars per month during her life, payable on the first day of each month hereafter, the first of which installments shall fall due on the first day of March, 1931, and the remaining installments on the first day of each month thereafter.

"(b) The sum of four thousand five hundred ($4,500) dollars, in evidence of which the party of the first part has

this day executed his negotiable, promissory note to the order of the party of the second part, payable on or before five years after date, with interest from date.

"(c)   The sum of five hundred ($500) dollars for the use and benefit of the attorneys representing the party of the second part.

"(d)   The party of the first part further agrees to deliver to the party of the second part his Chevrolet sedan automobile, with the title registered in her name and the license on same fully paid for the year 1931.

"(e)   The party of the first part further agrees that the party of the second part shall take from the home at Hartville, Virginia, such items of personal property as may belong to her, and such items of food, including canned goods as she may desire.

"(2)   It is further understood and agreed that the payment of the sums above mentioned shall be secured by a deed of trust, bearing even date herewith on certain real estate in Patrick county, Virginia, belonging to the party of the first part.

"(3)   The party of the second part shall accept the sums above mentioned in full discharge of all claims of whatever nature which she may have against the estate of the party of the first part arising out of the marital relation existing between them, whether such claims arise by way of dower, distributive share, inheritance or otherwise, it being the intention of the party of the second part, by this agreement, to relinquish, release and forever quitclaim any interest which she may now have or may hereafter acquire by reason of said marital relation against the party of the first part, or his estate, whether now in existence or hereafter acquired.   And to effectuate the purpose and spirit of this section she hereby covenants and agrees that she will execute such papers as may be requisite to facilitate the conveyance or transfer of any of first party's property so that he may freely deal with same.

"(4)   And in consideration of the premises the party of the first part doth hereby relinquish, release and forever

quitclaim unto the said party of the second part, her heirs and assigns any interest which he may have, or may hereafter acquire in and to the estate of the party of the second part, whether such claim or interest may arise by way of curtesy, distributive share, inheritance, or otherwise, and whether said estate be now in existence or be hereafter acquired. And to effectuate the purpose and spirit of this section, the party of the first part hereby covenants and agrees that he will execute such papers as may be requisite to facilitate the conveyance or transfer of any of second party's property so that she may freely deal with same.

"(5)    And the parties hereto do mutually covenant and agree with each other that in the event that a suit for divorce should be hereafter instituted by either party hereto, neither party will pray the court for any allowance of any nature by way of alimony, suit money, costs or attorney's fees.

"In witness whereof the parties hereto have hereunto set their hands and seals, in duplicate, on this the day and year first above written.

"I. C. DeHart        (Seal)

"Mollie J. DeHart  (Seal)."

Pursuant to this agreement, DeHart executed a trust deed on the two farms mentioned in the agreement, which he valued at the sum of $8,000. Immediately after the execution of the agreement and deed of trust appellant instituted a suit for divorce, on the sole ground of desertion. The prayer of the bill was that complainant be granted an absolute divorce and that the "property rights of each in and to the property of the other both present and contingent be annulled and abrogated, * * *." It is to be observed that no request for alimony was made.

Upon the final hearing on the 6th day of March, 1931, the court, after decreeing a severance of the matrimonial bonds, proceeded according to the prayer of the bill to adjudicate the property rights of the parties. This adjudication is set forth in the decree as follows:

"It further appearing to the court that the plaintiff and

defendant have by an agreement in writing entered into and duly acknowledged dated the 11th day of February, 1931, settled all questions relating to their property rights arising from their marriage, which said contract of separation is recorded in the clerk's office of Patrick county, Virginia, deed book 60, page —, and said agreement appearing to be reasonable and fair, it is hereby approved and confirmed by the court. And it is ordered and decreed by the court that all of the rights present or future, including contingent rights of dower and curtesy of either in and to the property of the other is hereby annulled, and abrogated, in conformity with the separation agreement of February 11, 1931, aforementioned. And nothing further appearing herein to be done, it is ordered that this cause be stricken from the docket."

It is to be further observed that the court did not deal with the question of alimony, but merely ratified the agreement as executed. At the time of the execution of the agreement and the trust deed, and the entry of the divorce decree, DeHart was the owner of other valuable real estate upon which there were no liens.

At the end of the statutory inhibition of six months DeHart married his present wife.

DeHart failed to pay the monthly installments as they fell due and appellant secured her several judgments against him, which were duly docketed as liens against his real estate. Facing insolvency, DeHart, on the 6th day of December, 1933, pursuant to the provisions of chapter 213A of the Code, executed a deed of assignment whereby he conveyed all of his property real and personal to J. M. Hooker and F. P. Burton, trustees, to secure all subsequent creditors *pro rata.*

On January 5, 1934, appellant filed her petition alleging that the agreement of February 11, 1931, which was confirmed by the court in the divorce suit, provides for the payment of alimony at the rate of $50 per month and that by virtue of the confirmation of the agreement by the court the decree is in legal effect a decree for alimony. If this

contention be tenable, appellant is entitled to a prior lien both present and future on the real estate of I. C. DeHart, to secure the payment of the monthly sum provided for in the agreement. The chancellor, however, was of opinion and accordingly decreed that the monthly payment of $50 was merely an allowance and that no decree for alimony had been entered in the divorce suit. The correctness of that holding constitutes the main question before us.

It is to be observed, as set forth in the statement of facts, that the contract between appellant and I. C. DeHart was entered into just a short time before the suit for divorce was instituted. There is nothing on the face of the contract, however, to suggest collusion on the part of the appellant and DeHart in regard to the divorce suit. Appellant was represented by capable counsel to whom DeHart paid a fee of $500. The contract is carefully drawn and to us it seems manifest that the sole intention of the parties was to put an end to any controversy in regard to property rights, and in the event of a suit for divorce by the wife, to conclude the question of alimony by the stipulation for the payment of $50 per month by way of an allowance. That such a conclusion is correct is fortified by the failure of appellant to make any demand for alimony in her bill of complaint, and further fortified by the failure of the court to conclude the question of alimony in the decree confirming the contract.

There is a further significant fact disclosed by the brief of appellant. It is there stated that when DeHart defaulted in the payment of the installments appellant sought to have a rule issued against him to show cause why he should not be attached and fined for contempt of court for not paying the sum. The court refused to award the rule, and appellant, by not appealing, acquiesced in the adjudication that the sum claimed was not alimony. While the issue of *res judicata* is not here raised, it is earnestly contended by appellee that the action of appellant in obtaining judgments for the fifty dollar installments as they fell due is conclu-

sive evidence of the practical construction placed on the contract by appellant.

Testifying as a witness in her own behalf, appellant stated that but for the depression, the two farms containing 713 acres would have afforded her ample security.

The case of *Moore* v. *Crutchfield,* 136 Va. 20, 116 S. E. 482, 484, is similar to the case at bar. In that case it appears that the husband and wife had entered into a separation agreement which provided for the payment by the husband of a lump sum of $5,000 and the further payment of a monthly sum of $25. Afterwards a suit for divorce on the ground of desertion was brought by the wife. In the decree granting a divorce from bed and board it was further provided that the agreement between the parties should be confirmed. The question of whether or not the contract provided for the payment of alimony or the payment of a sum certain in lieu of alimony was directly involved. This court, construing the contract and the decree entered in the divorce suit, held that the contract and decree confirming it did not provide for the payment of alimony. In the opinion it is said:

"The decree of divorce from bed and board separating the wife from the defendant here does not undertake to direct that the husband shall pay the wife alimony.

"There is no alimony awarded or allowed the wife. The fact that the court approved the agreement made between the parties partly in lieu of alimony does not make the order of court a decree for alimony. There is nothing in that decree that can give it the force and effect of a judgment against the husband for the amounts agreed by him in the contract to be paid to the wife, a result that follows from the usual decree ordering payment of alimony. (*Isaacs* v. *Isaacs,* 117 Va. 730, 86 S. E. 105, L. R. A. 1916B, 648.)

"A decree of court approving a contract between parties providing for payments in lieu of alimony and for the settlement of the property rights of the parties, is not a decree for alimony, and the court has no jurisdiction in the divorce suit to enforce compliance with the contract nor to alter its

terms upon subsequent application of one of the parties. 19 Corpus Juris, page 251, and notes; *Id.*, page 340; *Pryor* v. *Pryor*, 88 Ark. 302, 114 S. W. 700, 129 Am. St. Rep. 102."

In *Barnes* v. *American Fert. Co.*, 144 Va. 711, 130 S. E. 902, Judge Chinn held that a decree entered in a divorce suit approving a contract between the parties for the settlement of property rights is not a decree for alimony. To the same effect is the holding in *Eschner* v. *Eschner*, 146 Va. 417, 131 S. E. 800.

■ There is an additional reason why the appellant is precluded in her attack on the deed of assignment. Under the terms of clause 3 of the agreement, *supra*, appellant gave to DeHart express power to execute the deed of assignment. The language: "And to effectuate the purpose and spirit of this section she hereby covenants and agrees that she will execute such papers as may be requisite to facilitate the conveyance or transfer of any of first party's property so that he may freely deal with same," needs no construction. If there could be any doubt upon the question of alimony, it is set at rest by the solemn agreement of the parties contained in the last clause of the contract, which reads:

"And the parties hereto do mutually covenant and agree with each other that in the event that a suit for divorce should be hereafter instituted by either party hereto, *neither party will pray the court for any allowance of any nature by way of alimony, suit money, costs, or attorney's fees.*" (Italics added.)

The decree of the circuit court will be affirmed.

*Affirmed.*