# Richmond

JEANETTE S. HENEBRY v. LEO F. HENEBRY.

June 10, 1946.

Record No. 3047.

Present, All the Justices.

The opinion states the case.

*J. T. Engleby, Jr.*, for the appellant.

*Fred B. Gentry*, for the appellee.

SPRATLEY, J., delivered the opinion of the court.

This proceeding was originally instituted by Leo F. Henebry against his wife, Jeanette S. Henebry, on March 15, 1932, for the purpose of securing a divorce.

On May 20, 1932, the parties entered into a contract which reads, in part, as follows:

"WITNESSETH: That, WHEREAS, the parties hereto are husband and wife, but are not living together as such, and

"WHEREAS, the party of the first part has instituted a suit for divorce against the party of the second part, which is now pending and undetermined in the Court of Law & Chancery for the City of Roanoke, Virginia, and

"WHEREAS, the parties hereto desire to settle their respective property rights and all claims which the party of the second part has, or may have, against the party of the first part for support, maintenance and alimony, and as far as the parties hereto may legally determine for the time being, the amount which the party of the first part is to provide for the support, education and maintenance of Lucille Frances Henebry and Julia Ann Henebry, infant daughters of the parties hereto, and the cost of said divorce suit, including attorneys' fees, but without either of them acknowledging upon which of them is the fault or condoning the conduct of the one or the other which has led to the existing disagreement between them, or preventing any consequences which may follow and without prejudice to the rights of either party in the now pending divorce suit, and without any admission by the party of the first part that he is liable to the party of the second part for support, maintenance, alimony, suit money and attorneys' fees, except as to the matters and things specifically covered by this agreement.

"Now, THEREFORE, for and in consideration of the premises and the mutual obligations hereinafter set out the parties hereto agree with each other as follows:

"(1) The party of the first part agrees that he will pay the party of the second part the sum of $40.00 per month as long as she may live, or until her re-marriage, whichever event first occurs, said monthly payments to be made in two instalments, one not earlier than the 4th day of each month and not later than the 9th day of each month, and the other not earlier than the 15th day of each month or later than the 20th day of each month, for which said payments the

party of the first part acknowledges himself firmly indebted and bound unto the party of the second part. Provided, however, that if the marriage now existing between the parties hereto is dissolved by divorce and the party of the second part marries again, said monthly payments shall cease and the party of the first part shall no longer be liable therefor.

"(2)   The party of the first part further agrees that, subject to and until the future order of the Court in said cause, or until his daughters Lucille Frances Henebry and/or Julia Ann Henebry, respectively, attain the age of twenty-one years, or marry, he will each month pay to the party of the second part for the use, benefit, education, maintenance and support of his daughter Lucille Frances Henebry the sum of $42.50 per month, and will pay unto the party of the second part for the use, benefit, education, maintenance and support of his daughter, Julia Ann Henebry, the sum of $42.50 per month, said monthly payments to be made in semi-monthly instalments, one-half of each to be payable not earlier than the 4th or later than the 9th of each month, and the other one half of said semi-monthly instalments to be payable not earlier than the 15th of each month and not later than the 20th of each month.  Provided, however, that in the event of the death or marriage of either or both of said daughters, and in any event when they respectively attain the age of twenty-one years, the payments now agreed to be made for the use and benefit of such deceased or married daughter shall forthwith cease and terminate, and provided further it is specifically understood and agreed that the payments herein agreed to be made for the use and benefit of said daughters shall not prevent either of the parties hereto from at any time applying to the Court for a reduction or increase of the allowance herein made for the use and benefit of said daughters and the decision of such Court shall operate as revocation of the agreement of the party of the first part to make the payments herein agreed to be made for the use and benefit of said daughters.

"(3)   * * *

"(4)   * * *

"(5) The party of the first part agrees to pay certain bills and accounts recently incurred by the party of the second part, a list of which is attached to this agreement and which for identification bears the initials of the parties hereto, except a grocery bill incurred by the party of the second part with W. B. Jamison Grocery Company, which account the party of the second part agrees to pay and to idemnify the party of the first part from liability therefor.

"(6) * * *

"(7) * * *

"(8) The party of the first part hereby releases unto the party of the second part all his rights by the curtesy or otherwise in and to all property now owned by the party of the second part or hereafter acquired by her, including the personal property which in this agreement he has assigned and delivered to the party of the second part and further agrees that in the event the party of the second part desires to sell, assign or convey any property, real or personal, now owned by her or hereafter acquired by her and any purchaser from the party of the second part requires that the party of the first part join with the party of the second part in such conveyance or assignment that he at the request of the party of the second part will sign and acknowledge any instrument of conveyance or assignment which is presented to him for the purpose of releasing his interest by the curtesy or otherwise in any such property of the party of the second part.

"(9) * * *

"(10) The party of the second part agrees that the provisions herein made for her benefit are in full settlement, release and discharge of all interest by dower or otherwise which she may have in any property of the party of the first part not herein specifically mentioned, either real or personal, which may be now owned by the party of the first part or hereafter acquired by him, and in full settlement, release and discharge of any and all claims which the party of the second part has or might or could have against him for alimony and for support and maintenance and for suit money

and attorneys' fees, except the costs and attorneys' fees herein specifically mentioned. And the party of the second part further agrees that in the event the party of the first part desires to sell, assign, or convey any property owned by him or hereafter acquired by him not herein specifically mentioned, that she will at the request of the party of the first part sign and acknowledge any deed, or assignment or other instrument in writing which she may be requested by any purchaser from the party of the first part.

"(11) * * *

The contract was signed and sealed by Leo F. Henebry and Jeanette S. Henebry.

In his bill filed June 3, 1932, Henebry prayed for a divorce *a mensa et thoro* on the ground of cruelty.

On July 25, 1932, Mrs. Henebry filed her answer denying the allegation of her husband's bill. On the same day she filed a cross-bill for a divorce from the bonds of matrimony on the ground of desertion. She asked for the custody of the two infant children of the marriage, alimony for herself and support money for the children.

Henebry neither answered the cross-bill nor tendered evidence in support of the allegation of his bill. Mrs. Henebry, however, took the depositions of herself and others in support of her cross-bill, and upon that evidence which included a submission of the postnuptial contract to the court, a decree was entered December 3, 1932, granting her a divorce *a mensa et thoro* and awarding her the two children, Lucille, then ten years of age and Julia, nine.

The decree *a mensa* reads, in part, as follows:

"It further appearing that by a contract in writing dated May 20, 1932, signed and acknowledged by the complainant and the defendant, they agreed upon a settlement of their respective property rights, and the complainant by said contract did make certain provisions therein appearing for the support and maintenance of the defendant and for the two infant daughters of the parties hereto, to-wit: Lucille Frances Henebry and Julia Ann Henebry, which said provisions

as made for her and her said daughters were accepted by the defendant; and

"It further appearing that both the said parties to the said contract therein stipulate and agreed and requested that said contract should be approved by this Court in lieu of awarding and decreeing temporary and permanent alimony to the defendant herein, and the Court being of the opinion that it is proper that said contract be approved, ratified and confirmed, doth ADJUDGE, ORDER and DECREE that the said contract dated the 20th day of May, 1932, between the complainant and the defendant herein, be, and the same is, in all respects approved, ratified and confirmed in lieu and instead of decreeing to the defendant temporary and permanent alimony, and doth further ADJUDGE, ORDER and DECREE that all property now owned by the complainant, or hereafter acquired by him, shall be his, free and discharged from any and all claims of the defendant by dower or otherwise, and all property now owned by the defendant, or hereafter acquired by her, shall be hers, free and discharged from any and all claims of the complainant by the curtesy or otherwise; and

" * * *

"It is further ADJUDGED, ORDERED and DECREED that there is hereby reserved to both the complainant and the defendant to apply at any time to this Court for a change or alteration of that part of the said contract of May 20, 1932, as applies to the amount now to be paid by the complainant unto the defendant for the support, education and maintenance of said infant daughters of the parties hereto, the right being hereby reserved to the Court to increase or reduce the allowances made by said agreement of the parties hereto for the support of said infant daughters; * * * ."

On June 12, 1933, upon application of Henebry for a reduction of the allowance theretofore made for his children, and the request of Mrs. Henebry for an increase for them, a decree was entered containing the following language:

"Upon consideration whereof and it appearing that by a

decree formerly entered herein this Court confirmed a contract wherein Leo F. Henebry agreed to pay unto Jeanette Szlapka Henebry the sum of $40.00 per month for her own maintenance and support, and $42.50 per month each for the support, education and maintenance of his daughters, Lucille Frances Henebry and Julia Ann Henebry, said agreement, however, being made and confirmed subject to the conditions and provisions appearing in said contract and decree, and the court being of the opinion from evidence taken in open court in support and defense of said motions that the present financial condition and earning capacity of Leo F. Henebry justified a reduction of the allowances heretofore made and confirmed in said contract and decree, doth ADJUDGE, ORDER and DECREE that from and after June 1st, 1933, and until the further order of this Court in this cause that said allowances for said daughters shall each be reduced by the sum of $12.50, making the total amount per month which the said Leo F. Henebry shall pay to Jeanette Szlapka Henebry for the support, education and maintenance of both of said daughters the sum of $60.00 per month instead of $85.00, as heretofore, * * * and this decree shall not affect or impair the liability of Leo F. Henebry to continue to pay unto Jeanette Szlapka Henebry the said sum of $40.00 per month for her use, support and maintenance as is prescribed in said contract and decree; and the motion of Jeanette Szlapka Henebry that said allowances be increased is hereby overruled, and the Court doth further ADJUDGE, ORDER and DECREE * * * and that this cause be and the same is hereby stricken from the docket with the right, however, being reserved to either of the parties hereto to reinstate said cause on the docket of this Court upon his or her application therefor for the purpose of moving that the allowances now in effect for the support, education and maintenance of Lucille Frances Henebry and Julia Ann Henebry be either increased or reduced as the then circumstances of the case may justify, * * * ."

On June 25, 1934, a decree was entered denying the application of Mrs. Henebry for an increase in the allowance

for the support of the children. This decree again dismissed the case from the docket, reserving the right of the parties to apply in the future for an increased or reduced allowance to the children as the circumstances might later justify.

Upon the petition of Mrs. Henebry that the decree of divorce *a mensa et thoro* be merged into a divorce *a vinculo matrimonii*, a decree was entered on October 22, 1934, granting her a divorce from the bonds of matrimony. In this decree there appears the following language:

"It appearing to the court that heretofore at the June term, 1933, of this court, a decree was entered directing that the said Leo F. Henebry pay to Jeanette Szlapka Henebry the sum of $40.00 per month for her own maintenance and support and for the support, education and maintenance of both of said children the sum of $60.00 per month, it is ADJUDGED, ORDERED AND DECREED, that the said payments be continued as ordered in said decree.

"AND, it is further ADJUDGED, ORDERED and DECREED, that this cause be, and the same is hereby stricken from the docket, with the right, however, being reserved to either of the parties hereto to reinstate said cause on the docket of this Court, upon his or her application therefor, that the allowance now in effect for the support, education and maintenance of the children: Lucille Frances Henebry and Julia Ann Henebry, be either increased or reduced as the then circumstances of the case may justify, and that the said Leo F. Henebry do pay all taxable cost in this cause."

On July 15, 1944, Mrs. Henebry filed a petition to reinstate the case upon the docket, praying that her former husband be required to pay her an increased sum as alimony, in view of her additional need of support and his increased ability to make a larger allowance to her.

Henebry filed a demurrer to the petition and a motion to strike and dismiss. He contended that the property settlement and payments required of him under the contract were therein expressly provided to be in lieu of alimony; that the contract had been duly approved by the court; that he had

fully complied with his obligations thereunder; and that the court was without jurisdiction or power to impair the obligation of the contract by setting aside, enlarging, or rendering inoperative any of its provisions. He relied both on Virginia Code, 1942 (Michie), section 5111, as amended by the Acts of Assembly, 1944, chapter 277, page 397, and the law in effect prior to the said amendment.

Evidence was taken *ore tenus* in relation to the aforementioned contract, and the court, on April 21, 1945, sustained the demurrer and dismissed the petition. From this decree Mrs. Henebry appeals.

Mrs. Henebry contends that the trial court erred in sustaining the demurrer to her petition for an increase in alimony because the contract of May 20, 1932, was not filed with the pleadings or depositions in this proceeding and that the allowance made to her by the decree of the court was for alimony, subject to future adjustment to meet the changed conditions of the parties. She further contends that the 1944 amendment to Virginia Code, 1942 (Michie), section 5111, relating to stipulations or contracts between the parties filed with the pleadings or depositions in divorce cases was not here applicable, in that the statute is not retroactive or retrospective in operation.

The first contention of Mrs. Henebry requires the determination of the question whether the trial court decreed an allowance of alimony to her or decreed approval of a contract between her and her former husband for a settlement of their property rights and an allowance to her in lieu of alimony.

That the trial court, at the time the *a mensa* decree was entered, had the power to allow alimony, or approve and confirm a contract between the parties as to a property settlement and an allowance in lieu of alimony is not questioned. As to the origin of alimony and the jurisdiction of the court over provisions for the wife, see *Gloth* v. *Gloth*, 154 Va. 511, 153 S. E. 879, 71 A. L. R. 700. As to the jurisdiction of the court over agreements between the parties outside of the court, see *Casilear* v. *Casilear*, 168 Va. 46, 190 S. E. 314.

For power of the court in a divorce proceeding to ratify and confirm a contract between the parties as to their property rights and the payment of money in lieu of alimony, see *Moore* v. *Crutchfield*, 136 Va. 20, 28, 116 S. E. 482; *Barnes* v. *American Fertilizer Co.*, 144 Va. 692, 712, 130 S. E. 902; and *DeHart* v. *DeHart*, 164 Va. 455, 462, 180 S. E. 307.

The contract between the parties was entered into while this suit was pending, and prior to the decree *a mensa*. There is no evidence in the record to suggest that it was tainted by fraud, or unfair practice, or intended to stimulate the divorce proceeding.

The record in the clerk's office of the trial court does not show that the contract was ever physically placed in the permanent custody of an officer of the court. However, the depositions filed on behalf of Mrs. Henebry in support of her bill for a divorce disclosed that when Mrs. Henebry testified, her counsel exhibited it to her, and asked her whether or not she had entered into it. She examined it, said that it was her contract, that it correctly set forth her agreement, that she was willing to comply with it, and that she desired it to be approved by the court.

Examining the contract, we find that it, at the very outset, sets forth that the parties "desire to settle their respective property rights and all claims which the party of the second part has, or may have, against the party of the first part for support, maintenance and alimony, * * * ." The terms of the settlement are then specifically stated.

Paragraph 1 contains a provision for the payment of $40 per month to Mrs. Henebry.

Paragraph 2 provides for the maintenance and support of the two children by their father, which payments are expressly stated to be subject to any increase or reduction ordered by the court.

Paragraph 10 contains the following pertinent provision:

"The party of the second part agrees that the provisions herein made for her benefit are in full settlement, release and discharge of all interest by dower or otherwise * * * , and

*in full settlement, release and discharge of any and all claims which the party of the second part has or might or could have against him for alimony and for support and mainten-ance* and for suit money and attorneys' fees, except the costs and attorneys' fees herein specifically mentioned. * * * " (Italics supplied.)

Next we consider the decrees.

By the decree of December 3, 1932, the contract was "in all respects approved, ratified and confirmed *in lieu and instead of decreeing to the defendant temporary and per-manent alimony.*" (Italics supplied).

There was no alimony allowed in the decree of June 12, 1933. A change in the amount of the contractual allowance to Mrs. Henebry was not under consideration.

The final decree of October 22, 1934, granted Mrs. Henebry a divorce *a vinculo*. It also made reference to the contract between the parties and prior decrees in the cause. After reciting that a decree entered at the June term, 1933, directed Henebry to pay to Mrs. Henebry "the sum of $40 per month for her own maintenance and support," and $60 per month for the support of the children, it ordered that "the said payments be continued as ordered in said decree." Obviously, reference was made to the decree of June 12th, in which the court affirmed the obligation of Henebry to continue the payment of $40 per month to Mrs. Henebry "for her use, maintenance and support, *as is prescribed in said contract and decree.*" (Italics supplied). The decree of October 22nd, therefore, merely affirmed the decree of June 12th, with respect to the amount to be paid under the terms of the contract and the decree of December 3, 1932.

It is to be especially noted that while each of the decrees strikes the case from the docket, with the right reserved to either party to reinstate it for the purpose of asking that the provision made for the support of the infant children be increased or reduced, no reservation is made for the personal benefit of Mrs. Henebry.

A careful consideration of the record indicates that it was

the intent and purpose of the court in its subsequent decrees to reaffirm the decree of December 3, 1932, wherein the provisions of the contract in lieu of alimony were approved. There is nothing to indicate that the court intended to enter an award or judgment for alimony as such.

There never was any decree for alimony. The intention of the parties as expressed in their contract and the intention of the court was to end any controversy in regard to property rights, and to conclude the question of alimony by substituting the stipulation for the payment of the monthly allowance specified in the contract. The only purpose of the succeeding decrees, in mentioning the contract and its approval by the court, was to refer to the rights of Mrs. Henebry under the contract.

We are supported in this conclusion by the fact that while the several decrees specifically reserved the right of the parties to apply for an adjustment of the allowance to the children from time to time, they pointedly omit any reservation for the mother to ask for future adjustment of the allowance to her.

The monthly allowance made by Henebry was presumably for the support and maintenance of Mrs. Henebry. That she needed it for her support and maintenance was undoubtedly the reason for its inclusion in the contract; but it was an agreed settlement, a property settlement, providing a measure of support and maintenance. in lieu of alimony for support and maintenance.

"A decree of court approving a contract between parties providing for payments in lieu of alimony and for the settlement of the property rights of the parties, is not a decree for alimony, and the court has no jurisdiction in the divorce suit to enforce compliance with the contract, nor to alter its terms upon subsequent application of the parties." *Moore* v. *Crutchfield, supra; Barnes* v. *American Fertilizer Co., supra; DeHart* v. *DeHart, supra.*

In the *DeHart Case*, as in the present case, the court did not deal with the question of alimony; but merely ratified

a contract as executed. It thereby settled the controversy as to property rights and concluded all questions of alimony.

The present case may also be readily distinguished from *Gloth* v. *Gloth, supra; Capell* v. *Capell,* 164 Va. 45, 178 S. E. 894; and *Eaton* v. *Davis,* 176 Va. 330, 10 S. E. (2d) 893.

In the *Gloth Case,* there was a decree for alimony, and only an *a mensa* decree.

In the *Capell Case,* there was a decree awarding alimony. Subsequent to the decree, the parties entered into a contract modifying the provisions relating to alimony. The former husband did not make payment in accordance with the terms of the contract. Upon rule to show cause why he should not be punished for his failure to make such payment, he contended that the decree for alimony was "superseded" by the contract. It was held that the decree for alimony was not "superseded," and that the jurisdiction of the court could not "be ousted by any agreement of the parties *in pais* which the court itself does not adopt and approve."

In *Eaton* v. *Davis, supra,* no contract was involved. Questions relating to the modification of a decree for alimony were in issue.

In view of our conclusion that there was no decree for alimony in this case and that the court, after its approval of the provisions of the contract in lieu of alimony, had no jurisdiction to alter its terms upon the subsequent application of Mrs. Henebry, it is unnecessary to discuss at any length whether the 1944 amendment to Code, 1942, section 5111, was applicable to the proceedings had prior to its enactment, or whether the contract was filed as required by the amendment.

The pertinent portion of section 5111, with the 1944 amendment italicized, reads as follows:

"And upon petition of either party (the court) may increase, decrease, or cause to cease, any alimony that may thereafter accrue, whether the same has been heretofore or hereafter awarded, as the circumstances may make proper; *provided, however, if a stipulation or contract signed by the*

*party to whom such relief might otherwise be awarded is filed with the pleadings or depositions, then no decree or order directing the payment of alimony, suit money, or counsel fee, shall be entered except in accordance with their stipulation or contract unless such party raises objection thereto prior to entry of the decree."*

■ The amendment is, in effect, a recognition and approval of the obligations of the parties to a contract providing for the settlement of questions of alimony. It goes further. It limits the jurisdiction of the court on questions of alimony to the terms of the contract between the parties, when the contract has been filed as specified, and no timely objection has been taken thereto. A contract between the parties affirmed and adopted by the court at the request of the party to whom relief might otherwise be awarded should not be accorded less validity than a contract merely executed by the parties and filed with the pleadings.

■ It is immaterial, under the facts of this case, whether or not the 1944 amendment of section 5111 is retroactive, or whether the contract was physically filed with the depositions or pleadings. The contract was submitted to the court by Mrs. Henebry and ratified and approved at her request. Its submission, in writing, evidenced its existence and established its provisions. Its submission in the manner shown by the record fully carried out the purpose of the statute.

It follows that the decree of the trial court should be affirmed and it is so ordered.

*Affirmed.*