COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Elder and Beales
Argued at Richmond, Virginia


STARKE JETT, IV

                                                        MEMORANDUM OPINION[*] BY
v.        Record No. 2862-06-4                      JUDGE LARRY G. ELDER
                                                                JULY 3, 2007
MARGARET BOSCHEN JETT


                    FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                                David T. Stitt, Judge

        Stephen Quatannens for appellant.

        Drewry B. Hutcheson, Jr. (McGinley, Elsberg & Hutcheson, P.L.C.,
        on brief), for appellee.


        Starke Jett, IV, appeals from the denial of his request for a reduction or termination of

spousal support payable to Margaret Boschen Jett, his former spouse, due pursuant to a property

settlement agreement incorporated into the parties' final decree of divorce entered in 1976.  By

motion, Mr. Jett contends that the trial court lacked subject matter jurisdiction to award spousal

support in the 1976 decree.  On brief, he argues in the alternative that, based on the absence of

proof that the incorporated property settlement agreement was actually filed with the circuit

court prior to entry of the final decree in 1976, the provisions of Code § 20-109, as it existed at

the time of entry of the final decree, permitted him to seek a reduction or termination of support.

We hold the trial court had subject matter jurisdiction to award spousal support and that, on the

facts of this case, the applicable statute does not support the result Mr. Jett seeks.  Thus, we

─────────────────
        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

affirm the ruling of the trial court. We deny the parties' competing requests for an award of attorney's fees and costs incurred on appeal.

I.

BACKGROUND

Ms. Jett filed a bill of complaint for divorce in 1975, after over thirty years of marriage. On February 4, 1976, the parties executed a property settlement agreement (PSA). The PSA contained the following provision: "ALIMONY. Husband agrees to pay unto the wife the sum of $500.00 per month as and for alimony." The property settlement agreement contained no provision for modification of the amount of alimony.

By order entered August 3, 1976, the court granted the parties a divorce based on a one-year separation. At the parties' request, the court included in the decree the following provision:

> ADJUDGED, ORDERED and DECREED that the Property Settlement Agreement, dated February 4, 1976, be, and it hereby is ratified, confirmed and approved in conformity with Section 20-109.1 . . . and incorporated by reference into this Decree, and the Defendant, STARKE JETT, IV, be, and he hereby is, required to pay to the Complainant the sum of Five Hundred Dollars ($500.00) per month as and for her alimony and support.

The final decree was endorsed by Mr. Jett as "seen," "Defendant pro se," with no objections listed.

In 2006, Mr. Jett moved the court to reduce or terminate his obligation of spousal support to Ms. Jett. He contended, pursuant to the version of Code § 20-109 in effect when the decree was entered, that spousal support was modifiable unless a PSA was "filed with the pleadings or depositions," in which case the terms of the PSA applied. At the time Mr. Jett filed his motion to modify in 2006, no copy of the PSA was contained in the court file. Thus, contended Mr. Jett, nothing in the record established that the PSA had been "filed with the pleadings or depositions,"

- 2 -

or even with the final decree. As a result, Mr. Jett averred, the terms of the PSA did not apply, and the applicable version of Code § 20-109 permitted him to seek modification of the spousal support award.

Counsel for Mr. Jett conceded the parties entered into a PSA "dated February 4, 1976, that provided for spousal support in the amount of $500.00 to be paid by [husband] to [wife]" and that contained "no other terms" related to spousal support. He also conceded that the final decree "provided for the payment of $500.00 in spousal support pursuant to the Property Settlement Agreement." He made no argument that the PSA submitted by wife, which bore the parties' notarized signatures and included a provision for spousal support containing terms identical to the one husband admitted signing, was not an accurate copy of the PSA he and wife had executed. Nevertheless, he argued that the burden to file the PSA before entry of the decree was on Ms. Jett and that, in the absence of proof of such filing, the decree's provision regarding spousal support was modifiable pursuant to Code § 20-109.

The trial court ruled as follows:

> [T]here is no direct evidence one way or the other but -- and [Mr. Jett's attorney] has an interesting point about there may have been no requirement at the time that the PSA has already been filed to be incorporated in the final decree.
>
> But . . . I just can't imagine Judge Jamborsky signing a final decree incorporating a PSA that hadn't been filed. And I think that that is the only evidence that we have, and it's circumstantial certainly at best. But the fact that he signed the final decree incorporating a PSA to me is circumstantial evidence that the PSA had been filed.

By order entered October 16, 2006, the trial court ruled that Code § 20-109 as it existed in 1976 should be applied. It noted the absence of a PSA in the file but found that it must have been filed "at or prior to the time of entry of the Final Decree as the Court saw fit at that time to incorporate the terms of the [PSA] by reference and to specifically recite the agreed upon award

- 3 -

of spousal support." Because neither the PSA nor the final decree contained any provision "for amendment of the agreed upon award of spousal support," the trial court held Mr. Jett was "barred from seeking a modification or termination of spousal support."

II.

ANALYSIS

A.

MOTION TO DETERMINE SUBJECT MATTER JURISDICTION
TO ENTER SPOUSAL SUPPORT AWARD IN 1976

Prior to oral argument in this Court, Mr. Jett filed a motion to determine subject matter jurisdiction. He contended therein that because Ms. Jett's 1975 bill of complaint for divorce did not ask the trial court to award spousal support, the court lacked jurisdiction to do so in its 1976 final decree. Mr. Jett asked that we either remand to the trial court to consider the issue of subject matter jurisdiction or permit the parties to engage in separate briefing of the issue in this Court. By earlier order, we denied the request for remand or separate briefing. We now address Mr. Jett's motion on the merits and conclude the matter of spousal support was appropriately before the trial court.

Mr. Jett's complaint concerns not the court's subject matter jurisdiction but the court's ability to exercise that jurisdiction, an often-confused distinction upon which Virginia's appellate courts have commented frequently in recent years. Subject matter jurisdiction is "the authority granted to a court by constitution or by statute to adjudicate a class of cases or controversies." Earley v. Landsidle, 257 Va. 365, 371, 514 S.E.2d 153, 156 (1999). Code § 20-96 grants the circuit court "jurisdiction of suits . . . for divorces[] and claims for separate maintenance." Thus, the trial court had subject matter jurisdiction to make an award of spousal support in adjudicating the parties' divorce. Whether the trial court had the authority to address spousal support in the parties' case when Ms. Jett did not specifically request a spousal support award in her pleadings

- 4 -

does not implicate the *existence* of subject matter jurisdiction but only the court's *authority to exercise* that jurisdiction. See, e.g., Moore v. Commonwealth, 259 Va. 431, 437, 527 S.E.2d 406, 409 (2000) ("emphasizing the necessary distinction to be drawn . . . between the power of a court to adjudicate a specified class of cases, commonly known as 'subject matter jurisdiction,' and the authority of a court to exercise that power in a particular case"), overruled in part on other grounds by Nelson v. Warden of Keen Mt. Corr. Ctr., 262 Va. 276, 552 S.E.2d 731 (2001). Because the question Mr. Jett raises related solely to the court's ability to exercise the subject matter jurisdiction granted by statute, it was waivable, see Nelson, 262 Va. at 285, 552 S.E.2d at 77, and Mr. Jett waived his opportunity to challenge this aspect of the trial court's spousal support award by failing to object to the entry of the 1976 final decree in a timely fashion, see Epps v. Commonwealth, 47 Va. App. 687, 701-02, 626 S.E.2d 912, 918-19 (2006) (en banc) ("If the court lacks authority to exercise its subject matter jurisdiction, the order would be erroneous or voidable, not void, and appellant's remedy would be a direct appeal . . . ." (citation omitted)).

Thus, we find no basis for concluding the trial court lacked subject matter jurisdiction to award spousal support.

B.

MODIFIABILITY OF SPOUSAL SUPPORT

Mr. Jett contends the trial court erred in finding, pursuant to the version of Code § 20-109 in effect at the time the trial court entered the parties' final decree of divorce,[1] that the PSA had been filed at or prior to the time of entry of the final decree. We need not consider the sufficiency of the evidence to support the trial court's finding because we hold, based on the reasoning in Henebry v. Henebry, 185 Va. 320, 38 S.E.2d 320 (1946), that the ratification and

---

[1] The trial court ruled that the version of Code § 20-109 applicable in these proceedings was the one in effect when the trial court entered the final decree of divorce in 1976. Neither of the parties has appealed this ruling.

incorporation of the agreement into the final decree of divorce supports the result the trial court

reached.  Thus, we affirm.

Code § 20-109 as it existed in 1976 provided as follows:

> Upon petition of either party the court may increase, decrease, or cause to cease, any support and maintenance for the spouse that may thereafter accrue whether the same has been heretofore or hereafter awarded, as the circumstances may make proper; provided, however, if a stipulation or contract signed by the party to whom such relief might otherwise be awarded is filed with the pleadings or depositions, then no decree or order directing the payment of support and maintenance for the spouse, suit money, or counsel fee shall be entered except in accordance with that stipulation or contract unless such party raise objection thereto prior to entry of the decree . . . .

1975 Va. Acts ch. 644 (emphasis added).  Code § 20-109.1 permits a court to:

> affirm, ratify and incorporate by reference in its . . . decree of divorce . . . any valid agreement between the parties, or provisions thereof, concerning the conditions of the maintenance of the parties, or either of them and the care, custody and maintenance of their minor children, or establishing or imposing any other condition or consideration, monetary or nonmonetary. . . .  Where the court affirms, ratifies and incorporates by reference in its decree such agreement or provision thereof, it shall be deemed for all purposes to be a term of the decree, and enforceable in the same manner as any provision of such decree.

2003 Va. Acts ch. 260 (also stating that "[t]he provisions of this section shall apply to any decree

hereinbefore or hereinafter entered affirming, ratifying and incorporating an agreement as

provided herein").

The recognized purpose of Code § 20-109.1 is "to facilitate enforcement of the terms of

an incorporated agreement by the contempt power of the court."  Morris v. Morris, 216 Va. 457,

459, 219 S.E.2d 864, 866-67 (1975).  To apply the immediately preceding statute, Code

§ 20-109, as Mr. Jett urges would undermine this purpose for no apparent benefit, and the

Supreme Court reached just such a conclusion in Henebry on similar facts.

- 6 -

Henebry was decided shortly after the legislature acted in 1944 to amend the predecessor to Code § 20-109. 185 Va. at 329, 333, 38 S.E.2d at 325, 327. Prior to 1944, the "pertinent portion" of "Code, 1942, section 5111," provided that "upon petition of either party (the court) may increase, decrease, or cause to cease, any alimony that may thereafter accrue, whether the same has been heretofore or hereafter awarded, as the circumstances may make proper." Henebry, 185 Va. at 333, 38 S.E.2d at 327. In 1944, the legislature amended that code section to add,

> "provided, however, if a stipulation or contract signed by the party to whom such relief might otherwise be awarded is filed with the pleadings or depositions, then no decree or order directing the payment of alimony, suit money, or counsel fee, shall be entered except in accordance with their stipulation or contract unless such party raises objection thereto prior to entry of the decree."

Id. at 333-34, 38 S.E.2d at 327. Thus, the relevant language in the version of Code § 5111 in effect when Henebry was decided was identical in all substantive respects to the version of Code § 20-109 applied in the Jetts' case. See 1948 Report of the Comm'n on Code Recodification and Proposed Code of Va. (reflecting recodification of former § 5111 at §§ 20-107 to -113 of the 1950 Code); 1975 Va. Acts ch. 644 (amending statutory references of "alimony" to "support and maintenance for the spouse").

In Henebry, the contract included provisions by which Mr. Henebry agreed to pay to Mrs. Henebry both spousal support and child support but contained a modification provision only for child support. 185 Va. at 325-27, 38 S.E.2d at 323-24.

> [T]he record in the clerk's office . . . [did] not show that the contract was ever physically placed in the permanent custody of an officer of the court. However, the depositions filed on behalf of Mrs. Henebry in support of her bill for a divorce disclosed that when Mrs. Henebry testified, her counsel exhibited it to her, and asked her whether or not she had entered into it. She examined it, said it was her contract, that it correctly set forth her agreement, that she was willing to comply with it, and that she desired it to be approved by the court.

Id. at 330, 38 S.E.2d at 325-26.  The trial court "approved, ratified and confirmed" the contract

"in lieu and instead of" "decreeing . . . temporary and permanent alimony."  Id. at 326, 38 S.E.2d

at 323.  Sometime thereafter, Mrs. Henebry moved the court for an increase in "alimony."  Mr.

Henebry demurred based on the parties' contract, and the trial court sustained the demurrer.  Id.

at 328-29, 38 S.E.2d at 325.  Mrs. Henebry appealed, contending *inter alia* that the parties'

postnuptial contract did not prevent the court from increasing payments of alimony because it

was "not filed with the pleadings or depositions" as required by § 5111, id. at 329, 38 S.E.2d at

325, predecessor to Code § 20-109.

The Supreme Court held as follows:

> In view of our conclusion that there was no decree for alimony in
> this case and that the court, after its approval of the provisions of
> the contract in lieu of alimony, had no [power] to alter its terms
> upon the subsequent application of Mrs. Henebry, it is unnecessary
> to discuss at any length . . . whether the contract was filed as
> required by the [statutory language at issue].

Id. at 333, 38 S.E.2d at 327.  Nevertheless, the Court drew the following conclusion about the

meaning of the statutory language:

> *It is immaterial under the facts of this case, . . . whether the*
> *contract was physically filed with the depositions or pleadings.*
> The contract was submitted to the court by Mrs. Henebry and
> ratified and approved at her request.  Its submission, in writing,
> evidenced its existence and established its provisions.  Its
> submission in the manner shown by the record fully carried out the
> purpose of the statute.

Id. at 334, 38 S.E.2d at 328 (emphasis added).  The Court explained further:

> The [statutory language at issue] is . . . a recognition and
> approval of the obligations of the parties to a contract providing for
> the settlement of questions of alimony. . . .  It [also] limits the
> jurisdiction of the court on questions of alimony to the terms of the
> contract between the parties, when the contract has been filed [with
> the pleadings or depositions] as specified, and no timely objection
> has been taken thereto.  *A contract between the parties affirmed*
> *and adopted by the court at the request of a party to whom relief*
> *might otherwise be awarded should not be accorded less validity*

> *than a contract merely executed by the parties and filed with the pleadings.*

185 Va. at 334, 38 S.E.2d at 327 (emphasis added). Thus, the Court opined that an agreement affirmed and adopted by the court upon request but not filed with the pleadings or depositions is entitled to "validity" equal to or greater than the validity afforded "a contract merely executed by the parties and filed with the pleadings." Id.

Similarly, in the Jetts' case, nothing in the record establishes that the PSA was formally "filed" with the court. Nevertheless, Mr. Jett conceded in the trial court and in this Court that the PSA in the record, which bears the parties' notarized signatures, is an accurate copy of the agreement he and Ms. Jett entered into in 1976. Thus, the record makes clear that no dispute exists over the authenticity of the PSA or its specific contents.

The final decree stated that the PSA was "ratified, confirmed and approved," establishing it was just as binding on the parties and the court as a PSA that was formally "filed with the pleadings or depositions." In addition, in the Jetts' case, the court did more than "approve[], ratif[y] and confirm[]" the PSA as the court in Henebry did. Here, the court also "incorporated by reference into [the] Decree" the Jetts' entire PSA, and it specifically restated the provision requiring Mr. Jett "to pay to [Ms. Jett] the sum of Five Hundred Dollars ($500.00) per month as and for her alimony and support."

Because both Mr. Jett and Ms. Jett requested the court's action,[2] Mr. Jett may not now complain he had no opportunity to object to the contents of the PSA *prior* to entry of the decree, as he would have pursuant to Code § 20-109 if the PSA had been "filed with the pleadings or depositions" or at some other time prior to entry of the decree. Moreover, Mr. Jett had

---

[2] The PSA states that the parties would submit the agreement "to the court to be affirmed, ratified and incorporated in any decree which may be entered in any action between the parties hereto." The final decree also recognized "it is the desire of the parties that the said Agreement be ratified, confirmed and approved by the Court."

twenty-one days to object to entry of the decree itself. Instead of objecting to the entry of the decree, however, Mr. Jett endorsed the decree as "seen," "Defendant pro se," with no objections listed. Thus, the parties' actions and the decree satisfy the purpose of Code § 20-109.

C.

ATTORNEY'S FEES ON APPEAL

The parties make competing requests for an award of attorney's fees and costs on appeal. We deny the parties' competing motions because Mr. Jett did not prevail and Ms. Jett indicates on brief that her counsel has "serv[ed] on a *pro bono* basis" in defending the merits of the appeal. To the extent Ms. Jett's counsel may not have served on a *pro bono* basis in defending Mr. Jett's motion for a determination regarding subject matter jurisdiction, we conclude that the motion, although lacking merit, was not so frivolous as to persuade us that an award of fees and costs is appropriate under the facts of this case. See generally O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).

III.

For these reasons, we hold the trial court had subject matter jurisdiction to award spousal support. We also hold the trial court did not err in ruling that Mr. Jett was not entitled to seek a reduction or termination of spousal support due under the PSA. Thus, we affirm the ruling of the trial court. Finally, we deny the parties' competing requests for an award of attorney's fees and costs incurred on appeal.

Affirmed.