## Richmond

ALICE LENOIR HIGGINS v. EUNICE A. McFARLAND AND WILLIAM T. McFARLAND, ADMINISTRATOR OF JAMES M. McFARLAND, DECEASED.

March 7, 1955.

Record No. 4323.

Present, All the Justices.

The opinion states the case.

*James G. Martin & Son*, for the appellant.

*Willcox, Cooke & Willcox*, for the appellees.

HUDGINS, C. J., delivered the opinion of the court.

Alice L. Higgins instituted this suit against Eunice A. McFarland, the widow of James M. McFarland, and William T. McFarland, the administrator on his estate, to enforce the payment of the balance due on an original debt of $8,600.00 secured by a deed of trust on her (Mrs. Higgins') present home, 8630 Granby Street, Norfolk, Virginia. James M. McFarland had agreed to discharge this indebtedness by paying $59.74 a month, which included principal and interest, as set forth in a contract dated August 22, 1949, between him and appellant, then his wife, Alice L. McFarland, adjusting their property rights. This contract had been approved on the 7th day of October, 1949, in a decree granting appellant a divorce from James M. McFarland. In the present suit the chancellor sustained respondents' demurrer to the bill on the ground that the suit was based on an agreement to obtain a divorce by consent and was therefore against public policy and void.

The facts alleged in the bill and appearing from the exhibits filed therewith, and admitted to be true by the demurrer, are: In 1919 appellant married James M. McFarland, by whom she had four children. The parties separated in 1935 while residing in the City of Norfolk, Virginia. Soon after the separation James M. McFarland instituted suit for divorce in the Circuit Court of the City of Norfolk. This suit was dismissed after appellant filed an answer denying the allegations of the bill. In November, 1937, McFarland brought a second suit for divorce. Again appellant answered and denied the allegations in the bill. On the issues thus raised the court heard the testimony *ore tenus* and by

decree entered February 5, 1938, denied plaintiff a divorce, awarded the wife the custody of the four children and $20.00 a week alimony and support for herself and children. Later this weekly allowance was increased to $25.00.

McFarland moved his domicile from Virginia to North Carolina, though he continued to work in Virginia, and in 1940 obtained an absolute divorce in the Superior Court of Currituck County, North Carolina. As soon as appellant ascertained that her husband had obtained a divorce in North Carolina she instituted suit in the Court of Law and Chancery of the City of Norfolk, in which she sought a declaratory judgment as to her marital status in Virginia. The trial court held that the divorce obtained in North Carolina was inoperative and invalid in Virginia. This part of the decree was affirmed on appeal to this Court. *McFarland v. McFarland*, 179 Va. 418, 19 S. E. (2d) 77.

This remained the status of the parties until 1949 when McFarland, relying upon the decisions of the Supreme Court of the United States in *Williams* v. *North Carolina*, 317 U. S. 287, 63 S. Ct. 207, 87 L. ed. 279, 143 A. L. R. 1273, and *Williams* v. *North Carolina*, 325 U. S. 226, 65 S. Ct. 1092, 89 L. ed. 1577, 157 A. L. R. 1366, instituted an action against appellant in the United States District Court for the Eastern District of Virginia for the purpose of determining their marital status in Virginia and praying that the decree of divorce he obtained in North Carolina be declared valid in Virginia and elsewhere.

While this action was pending in the United States District Court McFarland and appellant executed the contract settling their property rights. In it reference was made to the numerous litigated controversies had between the parties, and in reference to the action then pending in the United States District Court it stated: "WHEREAS neither of the parties, nor their counsel, have any assurance or certainty as to the outcome of this pending litigation and these parties, being adult parties and entitled to contract, have determined

to settle all their differences in every respect by the terms of this agreement."

McFarland, among other things, agreed to pay certain sums to his son, Harry S. McFarland, for the benefit of appellant and to assume and discharge a debt secured by a deed of trust on the house and lot heretofore mentioned.

Appellant promised and agreed to accept the property settlement made upon her in lieu of alimony and maintenance previously awarded to her by decree entered in the Court of Law and Chancery of the City of Norfolk, and to surrender all other rights and claims upon her husband or his property. She further promised and agreed that, inasmuch as Virginia courts had decided that she was the innocent spouse and entitled to a divorce, she would institute within thirty days a divorce proceeding in the Court of Law and Chancery of the City of Norfolk and would "prosecute said proceedings to a final decree, thereby establishing to her satisfaction and conclusively that the parties hereto are divorced in Virginia as elsewhere."

The divorce proceeding was instituted and appellant was granted a divorce and in the same decree the court further adjudged that "the contract between the parties filed with the bill be, and it is, fully confirmed and approved and made a part of the decree of this Court to be carried out."

After this decree became final McFarland married respondent, Eunice A. McFarland and appellant married her present husband. McFarland paid the cash obligation set forth in the contract and continued to pay the $59.74 a month on the mortgage debt until he died intestate on October 12, 1953. Thereafter, his administrator, William T. McFarland, and the surviving widow, Eunice A. McFarland, denied the validity of the obligation and refused to make the monthly payments.

It is also alleged by appellant that after McFarland had executed the contract with appellant he bought with his own money a house and lot known as 7804 Michael Drive, Norfolk, and had the property conveyed to himself and his

wife, Eunice A. McFarland, as joint tenants with the right of survivorship; that he supplied the money with which to buy U. S. bonds in the amount of $5,000.00, and had them made payable to himself or Eunice A. McFarland; and that he paid the premiums on an $8,000.00 insurance policy and named Eunice A. McFarland as beneficiary; that the conveyance of the aforesaid house and lot and the $5,000.00 in U. S. bonds were all "pure" gifts without consideration and invalid as to the claim asserted by appellant.

It is further alleged that "the estate left by said James M. McFarland outside of house and lots and bonds is small and not sufficient to pay plaintiff the monies decreed in said divorce decree and defendants have failed and refused to pay" this obligation. The prayer is that both the real estate and personal property, or so much thereof as may be necessary, may be subjected to payment of appellant's claim.

This suit is based upon the decree confirming and approving the contract settling the property rights of the parties, not merely upon the contract itself. But if it were based on the contract the result would not necessarily be different under the facts of the case.

The parties had been separated since 1935. Appellant by former decree had been awarded and was receiving $25.00 weekly payments for alimony and maintenance. She was a married woman in Virginia and divorced in North Carolina. She was the innocent spouse and had been successful in numerous litigations in Virginia involving her marital rights. She was confronted with a long, expensive litigation over the same rights in the federal courts, in which she and her husband were represented by able and experienced attorneys. Neither the litigants nor their counsel were certain of the outcome of this litigation. Counsel and the litigants acted in good faith. It is clear from these unusual facts and circumstances that there was no possibility of the parties ever becoming reconciled. The difference in their marital status in Virginia and thirty miles away across the North Carolina boundary presented an intolerable situation, which might

have become worse if the action in the United States District Court had been prosecuted to a final determination. The Virginia court had determined that appellant was the innocent spouse and entitled to a divorce and had awarded her alimony which McFarland was paying in weekly installments. Appellant was not only entitled to a divorce upon the evidence formerly introduced in a proper forum, she was entitled to receive alimony and maintenance out of her husband's earnings and estate. She was also entitled to a dower right in his Virginia real estate and to a distributive share of any personal estate of which he might die seized and possessed. These facts entitled appellant, regardless of the provisions of the contract, to obtain a divorce and an award of permanent alimony. All these rights, except the right to sue for divorce, she surrendered in consideration of the property rights that McFarland had settled upon her in the contract. These facts and circumstances were known to counsel, litigants, and the court when it granted the divorce and confirmed and approved the agreement of the parties as to their property rights.

The foregoing are the facts and circumstances under which it is now claimed that the contract contravenes public policy. The question of public policy is as broad and variable as the question of what is fraud in a given case, and is addressed to the good, common sense of the chancellor. No fixed rule can be given to determine what is public policy. 12 Am. Jur., Contracts, Sec. 170, p. 667. It is sometimes defined as that principle of law under which freedom of contract or private dealings is restricted by law for the good of the community—the public good. What public good would have been advanced by denying approval of the contract in this instance? However, as heretofore stated, the suit is based not on the contract, but on a decree of the court confirming and approving it.

The act of placing such a contract before the court is the act of the parties. The acts of approving the agreement and of setting it out in the decree are acts of the court

and the parties are vested with the property rights therein stated by virtue of the judicial sanction and determination of the court, and not by the act of the parties in laying the agreement before it. *Barnes* v. *American Fertilizer Co.*, 144 Va. 692, 720, 130 S. E. 902.

A decree approving such a contract, unlike a decree for alimony, is not a lien upon the real estate of the husband, nor can it, like alimony, be enforced in the divorce proceeding. *Eaton* v. *Davis*, 176 Va. 330, 10 S. E. (2d) 893; *Bray* v. *Landergren*, 161 Va. 699, 172 S. E. 252; *Isaacs* v. *Isaacs, Guardian*, 117 Va. 730, 86 S. E. 105, L. R. A. 1916(b), 648; *Moore* v. *Crutchfield*, 136 Va. 20, 116 S. E. 482; *DeHart* v. *DeHart*, 164 Va. 455, 180 S. E. 307; *Henebry* v. *Henebry*, 185 Va. 320, 38 S. E. (2d) 320.

Such a contract so approved is a final adjudication of the property rights of the parties and cannot be changed by them without the approval of the court. The facts in *Barnes* v. *American Fertilizer Company, supra,* were that the court in a divorce proceeding had approved a contract between the husband and wife whereby the husband had agreed to grant his wife and his minor children certain described real estate. After the decree became final as to the property rights the American Fertilizer Company attached the real estate. The wife filed a petition in the attachment proceedings and claimed the property for herself and her children. The court held that the decree approving the contract vested in the wife and her minor children an equitable interest in the real estate, which was superior to the lien of the attachment. The court further held that the rights of the wife and the children did not depend upon the contract, but upon the judgment or decree of the court affirming the contract and that as such it could be enforced in a proper proceeding in a proper forum.

A decree for alimony is not founded on contract, but on the natural and legal duty of the husband to support the wife. No agreement of the parties has any effect on the decree awarding alimony unless it is ratified and made ef-

fective by judicial sanction. *Capell* v. *Capell*, 164 Va. 45, 178 S. E. 894; *Branch* v. *Branch*, 144 Va. 244, 132 S. E. 303; *Henebry* v. *Henebry*, *supra*. Judgments and decrees are contracts of the highest order and especially is this so when entered by consent of the parties. *Roberts' Adm'r* v. *Cocke*, *etc.*, 28 Gratt. (69 Va.) 207; *Hounshell* v. *Hounshell*, 116 Va. 675, 82 S. E. 689.

A similar question was before this Court in *Wallihan* v. *Hughes*, 196 Va. 117, 82 S. E. (2d) 553. The facts in that case were that a husband and wife while residents of Virginia determined that they could no longer live together as husband and wife and, thereupon, executed a contract determining the custody of their child and settling their property rights. The wife moved to and became domiciled in Nevada and instituted a suit for divorce, in which suit the husband appeared by counsel and filed an answer to the bill. The contract executed in Virginia was filed with the papers, ratified and approved in the proceedings. The husband performed his part of the contract by paying to the wife all sums mentioned in it. Later the wife returned to Virginia and declined to comply with the obligations she had assumed in the contract as ratified by the Nevada court. Whereupon the husband filed a bill in equity for a determination of his rights under the contract and the decree of that court. The wife defended on the ground that the contract showed on its face that the parties intended thereby to facilitate and promote the procurement of a divorce and, hence, she says it was void as against public policy. We held that the decree of the Nevada court confirming and approving the contract between the husband and wife bestowed upon it the status of a final judicial determination of the property rights of the parties. It stood upon a higher plane than a simple contract between adult parties. It was further held that even if the agreement did facilitate the procurement of a divorce, under the full faith and credit clause of the United States Constitution, Article IV, Section 1, the decree of the Nevada court was *res judicata* of the property

rights of the parties and enforceable in Virginia. Justice Miller speaking for the Court said (196 Va. 130): "When the parties are before a court of competent jurisdiction and a separation agreement is approved, confirmed and decreed upon, its validity is by that judgment rendered *res judicata* between the parties. . . ."

McFarland had full opportunity to challenge the validity of the contract in the divorce proceedings before it was confirmed and approved. He accepted all the benefits of the contract and the decree and complied with its terms until his death. His administrator and heirs have no right at this late date to attack the validity of the decree in this suit brought to enforce that part of it remaining unexecuted. To hold otherwise would be giving greater force and effect to a judgment of a sister state than we give to a final judgment of our own courts. *Kessler* v. *Fauquier National Bank, etc.*, 195 Va. 1095, 81 S. E. (2d) 440.

For the foregoing reasons the decree of the lower court is reversed and the case remanded for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*