Gary L. LAMB, Plaintiff-Appellant,

v.

BRIGGS MANUFACTURING, A DIVISION OF the CELOTEX CORPORATION, Defendant-Appellee.

No. 82-1762.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 25, 1982.

Decided Feb. 16, 1983.

Rehearing and Rehearing En Banc Denied April 14, 1983.

Robert L. Douglas, Robinson, Ill., for plaintiff-appellant.

William A. Armstrong, Mitchell & Armstrong, Marion, Ill., for defendant-appellee.

Before CUMMINGS, Chief Judge, WOOD, Circuit Judge, and MAROVITZ, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

This is an appeal from the district court's entry of summary judgment in favor of the defendant-appellee, holding that the plaintiff-appellant, as a matter of Illinois law, may not assert a claim for retaliatory discharge. The sole issue on appeal is whether the district court properly found that Illinois law as expounded in *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978), and *Palmateer v. International Harvester Company*, 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981), does not provide a tort cause of action for retaliatory discharge to a plaintiff employee who is, as here, party to a collective bargaining agreement. We affirm the holding of the district court.

I.

The relevant facts may be outlined briefly. The plaintiff employee suffered lower back pain in August, 1978 in the course of his work as a caster in the defendant's plant; the pain caused him to leave work and undergo a corrective operation. The plaintiff returned to work in April, 1979, only to again experience back pain. Shortly thereafter, he filed a Workmen's Compensation claim with the Industrial Commission, State of Illinois, and received an award. In June, 1980, the plaintiff returned to the defendant's factory with a medical release, and sought to resume his casting job. The defendant did not permit him to do so. Plaintiff in response filed a grievance pursuant to the collective bargaining agreement to which he was a party, alleging that the defendant had discriminated against him on the basis of his job-re-

---

* The Honorable Abraham Lincoln Marovitz, Senior District Judge for the Northern District of Illinois, is sitting by designation.

lated injury and that he had been discharged in retaliation for his filing of the Workmen's Compensation claim. The collective bargaining agreement in force provided:

> Management of the work and direction of the working forces, including the right to hire, suspend or discharge *for proper cause,* or transfer, and the right to relieve employees from duty because of lack of work *or for other legitimate reasons,* is vested in the company provided that this will not be used for the purpose of discriminating against any member of the Union. (emphasis added).

The grievance was arbitrated in May, 1981, with an outcome favorable to the plaintiff: the arbitrator found that the defendant had violated the collective bargaining agreement in refusing to reinstate the plaintiff, and ordered the defendant to reinstate plaintiff and pay to him all money and contract benefits lost since June, 1980. This award was subsequently enforced in federal district court.

Subsequently, the plaintiff filed this separate diversity action, alleging that he was unlawfully discharged from employment solely because he filed the Workmen's Compensation claim, and that he was therefore entitled to compensatory and punitive damages under Illinois law, citing *Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978), and *Palmateer v. International Harvester Company,* 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981). The district court granted the defendant's motion for summary judgment.

In doing so, the court noted that while in *Kelsay* the Illinois Supreme Court had indeed created the retaliatory discharge tort in order to protect the efficacy of the Illinois Workmen's Compensation Act, the Supreme Court appeared to have been guided mainly by its perception that in the "at will" employment relationship, insufficient protection would be afforded to employees who pursued compensation claims in the absence of tort action. Accordingly, the district court reasoned, the policy goal of *Kelsay* was satisfied alternatively and with-out the presence of this cause of action by the existence of collective bargaining contracts allowing discharge only for "proper cause" and providing a binding arbitration remedy for violation of that guarantee. The district court further noted that a subsequent Illinois appellate court decision, *Cook v. Caterpillar Tractor Co.,* 85 Ill. App.3d 402, 40 Ill.Dec. 864, 407 N.E.2d 95 (3d Dist.1980), had taken exactly this position and had affirmed the dismissal of a retaliatory discharge claim by a plaintiff covered by a collective bargaining agreement on the basis that the availability of an alternative contract remedy obviates the need for a separate tort action and on the further ground that allowance of such a separate tort would unreasonably disrupt the orderly arbitration procedure contemplated in the union contract. The district court concluded by rejecting plaintiff's argument that a subsequent Illinois Supreme Court decision, *Palmateer v. International Harvester Co.,* 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981), which extended the retaliatory discharge tort to cover an employee discharged for cooperating with a law enforcement investigation, mandated the extension of the retaliatory discharge cause of action to an employee covered by a collective bargaining agreement.

## II.

The limited question before us, then, is whether the Illinois Supreme Court would construe its *Kelsay* decision to cover plaintiffs who are not mere "at will" employees but also enjoy the protection of a union contract-provided "just cause" guarantee and arbitration remedies, or whether it would instead adopt the more limited construction formulated by the Illinois appellate court in *Cook.* The jurisprudential waters have been muddied somewhat further during this appeal by the decision of another Illinois appellate court in *Wyatt v. Jewel Companies, Inc.,* 108 Ill.App.3d 840, 64 Ill.Dec. 388, 439 N.E.2d 1053 (1st Dist. 1982), which, in contrast to the *Cook* decision, embraced the more expansive inter-

pretation of *Kelsay* proffered by the plaintiff.[1]

■ We note at the outset that, where no authoritative resolution of a legal issue had been rendered by the state courts, the district court's construction of state law on that issue is entitled to great weight on appellate review. *Bernhardt v. Polygraphic Co. of America, Inc.,* 350 U.S. 198, 203–4, 76 S.Ct. 273, 276, 100 L.Ed. 199 (1955); *Murphy v. White Hen Pantry Co.,* 691 F.2d 350, 354 (7th Cir.1982); Wright, *Federal Courts* § 58 at 271 (1976 ed.). In addition, precisely because the district court enforcing a state-created right in a diversity case is in substance "only another court of the state," the federal court may not "substantially affect the enforcement of the right as given by the state." *Bernhardt,* 350 U.S. at 203, 76 S.Ct. at 276, quoting *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 84 L.Ed. 2079 (1944). Within these parameters, we cannot find that the district court erred in refusing to unilaterally expand the reach of the Illinois Supreme Court's *Kelsay* decision to cover employees who do not suffer under the "at will" employment regime.

■ We are guided first by the Illinois Supreme Court's own statement of its holding and rationale in *Kelsay.* The court stated succinctly its conclusion that "[w]e are not convinced that an employer's otherwise absolute power to terminate an employee at will should prevail where that power is exercised to prevent the employee from asserting his statutory rights." *Kelsay,* 74 Ill.2d at 181, 23 Ill.Dec. 559, 384 N.E.2d 353. Thus, the court suggests that "at will" employment was the general universe of cases to which its exception applied. This interpretation is supported by the underlying rationale articulated by the court: the desire to spare employees the Hobson's choice of receiving Workmen's Compensation or retaining a job, alternatives which are mutually exclusive only in the absence of a third: grievance arbitration and a "just cause" contractual provision. As the court noted,

[The Workmen's Compensation scheme] would be seriously undermined if employers were permitted to abuse their power to terminate by threatening to discharge employees for seeking compensation under the Act. We cannot ignore the fact that when faced with such a dilemma many employees, whose common law rights have been supplanted by the Act, would choose to retain their jobs, and thus, in effect, would be left without a remedy either common law or statutory.

*Kelsay,* 74 Ill.2d at 182, 23 Ill.Dec. 559, 384 N.E.2d 353. The *Kelsay* court twice reemphasized the unfairness of putting employees to this choice between employment and compensation as the basis for its decision. *Id.* at 184, 185, 23 Ill.Dec. 559, 384 N.E.2d 353. In addition, the other state court decisions from which the *Kelsay* court drew support similarly addressed the problems of "at will" employees. *See Frampton v. Central Indiana Gas Co.,* 260 Ind. 249, 297 N.E.2d 425 (1973); *Sventko v. Kroger Co.,* 69 Mich.App. 644, 245 N.W.2d 151 (1976). In short, it was the Illinois Supreme Court's perception of the absence of any alternative to discharge for employees seeking compensation from a bad-faith employer that animated its decision to carve a limited exception to what it acknowledged was the general unqualified "at will" employment regime.

But, as noted, an employee such as the plaintiff-appellant who is covered by a collective bargaining contract need not necessarily suffer the stark dilemma posed in the "at will" employment situation. He may pursue his contractual remedies, as plaintiff did here, alleging that a retaliatory discharge violated his right to employment except for "proper cause . . . or for other legitimate reasons . . ."; and he may utilize the formidable tool of binding arbitration, and win reinstatement and back pay, as plaintiff did here. It was the availability of this alternative that led the Illinois appellate court in *Cook v. Caterpillar Tractor Co.,* 85 Ill.App.3d 402, 40 Ill.Dec. 864, 407 N.E.2d 95 (3d Dist.1980), to conclude that *Kelsay*

1. The Illinois Supreme Court has denied leave to appeal in both *Cook* and *Wyatt.*

did not extend to situations distinguished by collective bargaining coverage. As the *Cook* court noted,

> The policy considerations in *Kelsay* are not present here. In the instant case the employee is protected [by a collective bargaining agreement allowing discharge only for just cause and prescribing arbitration to guarantee the parties' rights] ... [T]he discharge provisions of the collective bargaining agreement serves to protect the employee from retaliatory discharge. Thus, the employee is free to apply for workmen's compensation without worrying that he will have to sacrifice his job to gain those benefits.

*Cook,* 85 Ill.App.3d at 406, 40 Ill.Dec. 864, 407 N.E.2d 95. The *Cook* court based its interpretation of *Kelsay* on another ground as well: the public policy of facilitating orderly, bilateral industrial relations. As the court observed,

> To permit an employee to circumvent procedures mutually agreed upon for handling grievances by filing suit in the first instance would undermine the collective bargaining agreement. Grievance procedures, including arbitration, were set up to prevent industrial strife. (See *United Steelworkers of America v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409.) To permit these procedures to be circumvented in a situation where the employee is protected by the procedures is to invite strife unnecessarily. The employee has a remedy in contract, and to expand the tort of retaliatory discharge to include the instant situation is not only unnecessary, but counterproductive as well.

*Cook,* 85 Ill.App.3d at 406, 40 Ill.Dec. 864, 407 N.E.2d 95. We find this ground an especially persuasive basis for resisting the expansive interpretation of *Kelsay* which plaintiff urges upon us, since we are inclined to think that the contours of the general "public policy" exception announced by the Illinois Supreme Court would surely be tailored so as not to obliterate other "public policies" of the state, such as the protection of orderly industrial relations.

The Illinois Supreme Court's later decision in *Palmateer v. International Harvester Co.,* 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981), only reinforces the conclusion that *Cook,* rather than the contrary decision in *Wyatt,* represents an authentic reading of *Kelsay.* In *Palmateer,* the Illinois Supreme Court again underscored that the tort of retaliatory discharge "is an *exception* to the *general rule* that an 'at will' employment is terminable *at any time for any or no cause.*" *Palmateer,* 85 Ill.2d at 128, 52 Ill.Dec. 13, 421 N.E.2d 876. (emphasis added). The *Palmateer* court also explicitly noted that the rationale of *Kelsay* rested on the peculiar vulnerability of a worker under the atomistic, non-unionized regime of "at will" employment. After a review of the laissez-faire contractual theory underlying the "at will" employment concept, the court observed,

> Recent analysis has pointed out the shortcomings of the *mutuality analysis.* With the rise of large corporations conducting specialized operations and employing relatively immobile workers who often have no other place to market their skills, *recognition that the employers and employees do not stand on equal footing is realistic.*

*Palmateer,* 85 Ill.2d at 129, 52 Ill.Dec. 13, 421 N.E.2d 876. (emphasis added). To the extent that the realignment of industrial workplace power is fostered by the collective bargaining process, this alarm at the lack of "equal footing" is substantially allayed. The *Palmateer* court also went on to note that by "recognizing the tort of retaliatory discharge, *Kelsay* acknowledged the common law principle that parties to a contract may not incorporate in it rights and obligations which are clearly injurious to the public." *Id.* at 129, 52 Ill.Dec. 13, 421 N.E.2d 876. Like the "mutuality" desideratum, this policy basis giving rise to *Kelsay* is also satisfied in collective bargaining situations without the creation of a new tort, for the union contract explicitly incorporates "rights and obligations" *congruent* with public policy, *i.e.* the requirement of "just" or "proper" cause for discharge.

The appellate court decision in *Wyatt v. Jewel Companies, Inc.,* 108 Ill.App.3d 840, 64 Ill.Dec. 388, 439 N.E.2d 1053 (1st Dist. 1982), which extends the retaliatory discharge tort to collective bargaining situations, does not persuade us that our less expansive reading of *Kelsay* is mistaken, for that decision fails to seriously take note of the policy predicates articulated in *Kelsay* and *Palmateer.* Most egregiously, the *Wyatt* court dismisses the "at will" language in *Kelsay* as a mere fortuity resulting from the particular facts before the *Kelsay* court, *Wyatt,* 108 Ill.App.3d at 841, 64 Ill.Dec. 388, 439 N.E.2d 1053, ignoring that the unsavory dilemma of employment versus compensation posed peculiarly in the "at will" employment circumstance was, as noted *supra,* crucial to the Illinois Supreme Court's analysis.

The *Wyatt* court also suggests that the reading of *Kelsay* adopted in *Cook* results in the anomalous award of punitive damages to non-union employees while limiting union employees to "compensatory damages" through arbitration. Similarly, an especially lucid and thoughtful law review note[2] on this subject points out that reliance on collective bargaining agreements alone to protect the policy favoring the pursuit of compensation may either deprive the employee of any recovery in some cases (due to a union's reluctance to arbitrate, or to the complicated obstacles posed by federal preemption), or severely limit his recovery (making impossible, for example, the receipt of damages for mental suffering or injury to professional reputation).[3]

While we might well find that such disparities between the fruits of successful pursuit of tort and contractual remedies warranted the creation of an unqualified right of action for retaliatory discharge were we given jurisdiction to determine the issue as a matter of federal judicial policy, we decline to so interpret Illinois law when faced with the carefully hedged formulations and rationales put forth by the state's

highest court in *Kelsay* and *Palmateer.* Accordingly, we cannot agree that the district court, sitting with only federal diversity jurisdiction, erred in refusing to undertake an expansion of the Illinois tort of retaliatory discharge into new legal territory. *Bernhardt v. Polygraphic Co. of America, Inc.,* 350 U.S. 198, 203, 76 S.Ct. 273, 276, 100 L.Ed. 199 (1955); *Murphy v. White Hen Pantry Co.,* 691 F.2d 350, 354 (7th Cir.1982).

## CONCLUSION

For the foregoing reasons, the district court's entry of summary judgment in favor of defendant is AFFIRMED.

**2.** Note, *Kelsay v. Motorola, Inc.—Illinois Courts Welcome Retaliatory Discharge Suits Under the Workmen's Compensation Act,* 1980 U.Ill.L.F. 839.

**3.** *Id.* at 852 & n. 80, 853 & n. 81, 64 Ill.Dec. 388, 439 N.E.2d 1053.