**Alvin R. MESSENGER, Plaintiff,**

v.

**VOLKSWAGEN OF AMERICA, INC., a corporation, Defendant.**

**Civ. A. No. 82–2601.**

United States District Court, S.D. West Virginia, Charleston Division.

May 18, 1984.

---

**566**

Daniel F. Hedges, Charleston, W.Va., for plaintiff.

Ricklin Brown and Thomas E. Scarr, Charleston, W.Va., for defendant.

## MEMORANDUM ORDER

COPENHAVER, District Judge.

This matter is before the court on the motion of defendant for summary judgment.

In this civil action, plaintiff alleges that his employment with defendant was wrongfully terminated on account of his pursuit of West Virginia Workers' Compensation benefits. Plaintiff alleges that the termination of his employment is in violation of W.Va.Code § 23–5A–1 [1] and the public policy of West Virginia. Plaintiff seeks reinstatement, back pay, and compensatory and punitive damages.

Plaintiff began working at defendant's South Charleston plant on September 19, 1978. On July 7, 1979, plaintiff was injured on the job and he eventually was granted an 8% permanent partial disability award on February 10, 1982. Defendant's Exhibit B.

Following plaintiff's injury on July 7, 1979, defendant contends that plaintiff failed to attend work on several occasions without first notifying defendant that he would be absent and without making any subsequent justification for his absence.[2]

[1]. W.Va.Code § 23–5A–1 provides:
Discriminatory practices prohibited.
No employer shall discriminate in any manner against any of his present or former employees because of such present or former employee's receipt of or attempt to receive benefits under this chapter [Workers' Compensation].

[2]. Defendant has submitted disciplinary action reports which indicate that plaintiff was absent from work without justifiable cause on the following dates: October 7–13, 1980; October 27, 1980; November 5, 1980; January 13, 1981;

On February 18, 1981, plaintiff was initially discharged for absenteeism, to which plaintiff filed a grievance. The matter was settled prior to any arbitration proceedings, with plaintiff receiving a thirty-day suspension and being returned to work on probationary status. Deposition of plaintiff, pp. 35–36. Finally, on May 12, 1981, plaintiff was discharged due to another absence from work on the previous day. *Id.*, p. 36.[3] On the day of his discharge, the union filed a grievance on behalf of plaintiff, which was eventually withdrawn without prejudice by the union on July 17, 1981. *See Id.*, pp. 38–39 and Exhibits 10 and 11 thereto.[4]

Defendant argues that plaintiff's claim against it is a § 301 action, 29 U.S.C. § 185,[5] even though the complaint is not framed in the context of federal labor law. As a § 301 action, defendant argues that this suit is time-barred by the six-month statute of limitations established in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).[6]

Plaintiff insists that his cause of action does not involve a breach of the collective bargaining agreement and is thus not a § 301 suit; rather, plaintiff contends his claim is strictly a state law cause of action governed by the applicable two-year statute of limitations for personal torts. *Shanholtz v. Monongahela Power Co.*, 270 S.E.2d 178 (W.Va.1980).

In the present case, a collective bargaining agreement between the defendant and the plaintiff's union, including both the International Union of the United Auto Workers and its Local 1933, existed at the time of plaintiff's discharge. The agree-

February 9–12, 1981; February 18, 1981 (late for work); May 11, 1981. *See* defendant's Exhibits C, D, E, F.

**3.** Plaintiff contends he was absent from work on May 11, 1981, because he was having body work done on his truck and had no way to get to work on that date. Deposition of plaintiff, p. 42.

**4.** Although it is somewhat unclear, it appears that plaintiff then filed a charge against both his union and employer with the National Labor Relations Board, his charge being dismissed by the regional office in Cincinnati and subsequent appeal to the Board denied. Deposition of plaintiff, pp. 40–41.

**5.** Section 301 of the Labor Management Relations Act of 1947 confers jurisdiction upon federal district courts over suits brought upon collective bargaining agreements. *See Auto Workers v. Hoosier Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966).

**6.** It is well established that an individual employee may bring suit against his employer for breach of a collective bargaining agreement. *Smith v. Evening News Assn*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); *DelCostello*, 103 S.Ct. at 2290. However, an employee is ordinarily required to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement, *DelCostello*, 103 S.Ct. at 2290; *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); and the employee will be bound by the result according to the finality provisions of the agreement unless the arbitral decision does not draw its es-

sence from the collective bargaining agreement. *W.R. Grace & Co. v. Local 759*, 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983); *Steelworkers v. Enterprise Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

If, however, an employee believes his union has breached its fair duty of representation to him, he may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding. *Hines v. Anchor Motor Freight*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Such a suit technically comprises two causes of action. The suit against the employer is based on § 301 because the employee is alleging a breach of the collective bargaining agreement, while the suit against the union is one for breach of the union's duty of fair representation, which arises from the National Labor Relations Act. *DelCostello*, 103 S.Ct. at 2290. "Yet, the two claims are inextricably interdependent. To prevail against either the company or the union, ... [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the union.'" *Id.*, quoting *United Parcel Service v. Mitchell*, 451 U.S. 56, 66, 101 S.Ct. 1559, 1565, 67 L.Ed.2d 732 (1981). The employee may sue one defendant and not the other, but the case he must prove is the same whether or not both defendants are sued. The suit is not a straightforward breach of contract suit under § 301, but a "hybrid § 301/fair representation claim, amounting to 'a direct challenge to the private settlement of disputes under the collective bargaining agreement.'" *Id.*

ment provided for a grievance and arbitration procedure whereby disputes arising under the contract could be resolved.[7]

In his complaint, plaintiff alleges that the termination of his employment was in violation of W.Va.Code § 23–5A–1 [8] and the public policy of the State of West Virginia inasmuch as he was discharged due to the pursuit of Workers' Compensation benefits. Plaintiff contends that W.Va.Code § 23–5A–1 makes it clear that terminating an employee for filing a workers' compensation claim contravenes a substantial West Virginia public policy. In support of this contention, plaintiff cites *Shanholtz v. Monongahela Power Co.*, 270 S.E.2d 178 (W.Va.1980).

In *Shanholtz*, involving an "at will" employee, the West Virginia Supreme Court reiterated the principle of retaliatory discharge as developed in *Harless v. First National Bank*, 246 S.E.2d 270 (W.Va. 1978). In *Harless*, the court stated:

> The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principal [sic] that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge.

*Harless*, syllabus by the court. In *Shanholtz*, the court acknowledged that it is both a contravention of public policy and actionable to discharge an employee because he has filed a workers' compensation claim.

---

7. The agreement between defendant and the UAW covering the period from January 21, 1980, through January 17, 1983, provided in pertinent part:

> (7) The Company retains the sole right to manage its business, including the right to ... maintain order and efficiency in its plants and operations including the right to implement, revise, terminate and enforce reasonable rules and regulations to discipline and discharge employes for just cause ....
>
> ....
>
> (16a) Any misunderstanding, difference, or controversy, concerning the interpretation or application of this Agreement may be addressed by management, the Union, or represented employes in the form of a grievance during the terms of this agreement. (The grievance procedure is outlined in paragraphs 17 to 29(c) of the Agreement).
>
> ....
>
> (22) The parties shall select a mutually satisfactory permanent Arbitrator, who, subject to the limitations outlined in this subparagraph shall be empowered to hear, investigate and decide any difference between the parties, which arises in connection with the interpretation and/or application of the provisions of the Agreement. The Arbitrator shall have full discretion to uphold, modify or rescind disciplinary measures imposed by the Company.
>
> (22a) The Arbitrator shall have no power to: (1) add to, subtract from, or otherwise modify any of the provisions of the Collective Bargaining Agreement; (2) establish or modify any work standard or wage rate covered in Paragraph (78); (3) rule on grievances concerning the health and safety of employes;

(4) pension plan, insurance program, and Supplemental Unemployment Benefit plan; (5) issues or disputes arising under the Waiver Section; nor (6) any other matter governed by local, state or Federal laws. Any case appealed to the Arbitrator in such matters shall be referred back to the parties without decision or recommendation.

....

(22d) Decisions of the Arbitrator shall be final and binding on the Union, its members, the employe or employes involved and on the Company.

....

(29) Any claims including claims for back wages by an employe covered by this Agreement or by the Union, against Management shall not be valid for a period prior to the date the grievance was first filed in writing, except that:

....

(29c) No claim for back wages shall exceed the amount of wages the employe would otherwise have earned at his regular rate less: (1) Any unemployment or workmen's compensation he may have received, or (2) Any compensation for personal services during the period covered by the grievance.

....

(34) Grievances regarding disciplinary written reprimands, layoffs, suspensions, or discharges shall be filed within three (3) working days of the disciplinary action taken.

....

(192) The Company and the Union agree that the provisions of the Agreement shall apply to all employes covered by the Agreement without discrimination ....

8. *See* note 1, *supra*.

Defendant argues that the present action can only be regarded as a § 301 suit and that the plaintiff may not avoid the six-month time limitations of a § 301 suit by framing his action under a state Code section. Intrinsic to this argument is the notion that federal law preempts a claim for wrongful discharge based on a violation of state public policy.

Both the Ninth and Tenth Circuit Courts of Appeals have held that a suit alleging wrongful termination in violation of state public policy is not preempted by federal labor law, nor are such suits precluded by binding arbitration clauses of the collective bargaining agreements. *Garibaldi v. Lucky Food Stores, Inc.*, 726 F.2d 1367 (9th Cir.1984); *Peabody Galion v. Dollar*, 666 F.2d 1309 (10th Cir.1981).

In both *Garibaldi* and *Peabody*, the plaintiff-employees brought state based wrongful discharge actions after unsuccessfully pursuing the grievance and arbitration procedures of their respective collective bargaining agreements.[9] By allowing plaintiffs to maintain an independent wrongful discharge action, these courts found that the respective state causes of action did not seek to regulate the employment relationship nor were they in conflict with the National Labor Relations Act (NLRA). *Garibaldi*, 726 F.2d at 1374–75; *Peabody*, 666 F.2d at 1316–19. Rather, it

was the underlying state statute or public policy that was being enforced. *Id.*

In short, "state law may protect interests separate from those protected by the NLRA provided the interests do not interfere with the collective bargaining process." *Garibaldi, Id.* at 1375–76. In *Peabody*, the Tenth Circuit acknowledged that the legitimate state concern of preventing retaliatory discharges of employees seeking workers' compensation benefits was indeed substantial in that such discharges, if allowed, "would seriously hamper the operation of the Workers' Compensation System." *Peabody, Id.* at 1319. Similarly, in West Virginia, the wrong to which a wrongful discharge action is aimed is not the act of discharging the employee, but the act of contravening public policy in carrying out the discharge. *Shanholtz*, 270 S.E.2d at 182.[10]

The distinctly separate nature of a claim arising under a collective bargaining contract and that of a tort claim arising from the violation of state public policy led the Ninth and Tenth Circuits to hold that the arbitration procedures of the collective bargaining agreement did not bar a subsequent lawsuit, despite the fact that the plaintiffs initially attempted to seek redress through that same process. *Garibaldi*, 726 F.2d at 1375–76; *Peabody*, 666 F.2d at 1320–23.

---

**9.** In *Peabody*, thirty-four plaintiffs sued their employer for wrongful discharge based on an Oklahoma statute similar to the statute in the instant case, which prohibits the discharge of an employee because the employee filed a workers' compensation claim or instituted any proceeding under the state's Workers' Compensation Act. In *Garibaldi*, plaintiff alleged that he was wrongfully discharged because he refused to deliver a load of spoiled milk, but instead notified the local health department, who in turn condemned the milk. In California, the sale of adulterated milk is prohibited by statute.

**10.** The United States Supreme Court has held that a state law or policy of general applicability is not preempted by the NLRA "where the activity regulated was a merely peripheral concern of the Labor Management Relations Act" or "touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, [the Court]

could not infer Congress had deprived the states of the power to act." *San Diego Unions v. Garmon*, 359 U.S. 236, 243–44, 79 S.Ct. 773, 778–79, 3 L.Ed.2d 775 (1959). *See, e.g., New York Telephone Co. v. New York Dept. of Labor*, 440 U.S. 519, 99 S.Ct. 1328, 59 L.Ed.2d 553 (1979) (state unemployment compensation statute not preempted); *Sears, Roebuck & Co. v. Carpenters*, 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978) (state trespass statute not preempted); *Farmer v. Carpenters*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977) (intentional infliction of emotional distress action not preempted); *Linn v. Plant Guard Workers*, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966) (defamation action not preempted); *Automobile Workers v. Russell*, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958) (action for malicious interference with lawful occupation not preempted); *Youngdahl v. Rainfair*, 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151 (1957) (state injunctive power against violent activity not preempted).

It is also to be observed that the relief afforded an employee under the collective bargaining agreement is not the same as that available under a wrongful discharge tort action in which the plaintiff may recover not only lost wages but also other compensatory damages and, in cases where the employer's conduct is wanton, willful or malicious, punitive damages may be appropriate as well. *Harless v. First Nat'l Bank in Fairmont*, 289 S.E.2d 692, 702–03 (W.Va.1982). On the other hand, under the collective bargaining contract, the plaintiff, if he prevailed, would have been entitled to reinstatement and back pay.[11]

A case ostensibly at odds with the rationale of *Garibaldi* and *Peabody* is *Lamb v. Briggs Manufacturing, a division of The Celotex Corp.*, 700 F.2d 1092 (7th Cir.1983), in which the Seventh Circuit held that an employee who alleges that his discharge was in retaliation for the exercise of an Illinois statutory right (i.e., pursuit of workers' compensation benefits) may not maintain a tort action for wrongful discharge if such employee is covered by a collective bargaining agreement which provides, as here, that all discharges must be for just cause. In reaching this conclusion, however, the court based its decision upon controlling state law to the effect that the state tort action applied only to "at will" employees and not to employees covered by a collective bargaining agreement.

Inasmuch as W.Va.Code § 23–5A–1 is not expressly limited to "at will" employees, nor is such a limitation made explicit in either *Harless* or *Shanholtz*, the rationale of the *Lamb* court is inapposite.[12] Moreover, the collective bargaining agreement in this case specifically provided that the arbitrator had no power to rule on matters governed by local, state or federal law,[13] leading to the conclusion that the parties to the collective bargaining contract did not intend to limit to arbitration alone, disputes arising out of the violation of state law.

 In keeping with the rationale of *Garibaldi* and *Peabody*, the court concludes that plaintiff can maintain a tort action based upon wrongful discharge in violation of West Virginia's public policy, and that such a claim is not preempted by federal labor law nor barred by the binding arbitration provisions of the collective bargaining agreement. Moreover, because a tort action of wrongful discharge in West Virginia carries a two-year statute of limitations, *Shanholtz, supra*, the present suit is not time barred inasmuch as it was filed on November 3, 1982, less than two years after the time when the action accrued on July 17, 1981.

Accordingly, it is ORDERED that defendant's motion for summary judgment be, and the same hereby is, denied.

---

**11.** *See* note 7, ¶ ¶ (22), (29), (29c), *supra*.

**12.** Indeed, point 2 of the syllabus by the court in *Shanholtz*, at 180, broadly states: "It is a contravention of public policy and actionable to discharge an employee because he has filed a Workmen's Compensation claim against his employer."

**13.** *See* note 7, ¶ (22a), *supra*.