336 S.E.2d 204

**Elizabeth A. YOHO**

v.

**TRIANGLE PWC, INC., and Local Union 1051.**

**No. 16510.**

Supreme Court of Appeals of West Virginia.

July 10, 1985.

Dissenting Opinion July 12, 1985.

Rehearing Denied Nov. 8, 1985.

**558**

Phillips, Gardill, Hazlett & Kaiser, James C. Gardill, R. Dean Hartley, Wheeling, for appellant.

Reed, Smith, Shaw & McClay, Tracey G. Benson, Leonard L. Scheinholtz, William Bevan, III, Pittsburgh, Pa., for Triangle PWC.

Donald G. Logsdon, Charleston, for IBEW Local Union 1051.

BROTHERTON, Justice:

The appellant, Elizabeth A. Yoho, began employment with Triangle PWC, Inc., (Triangle), on December 8, 1980, as a utility laborer. On April 2, 1981, she was assigned the task of temporary filter operator, and was required to manually replenish an acid bath as part of her job. While attempting this task, she fell and spilled two gallons of acid on herself, which resulted in second and third degree burns over thirty-five percent of her body.

By order dated June 1, 1981, the Workers' Compensation Commissioner awarded Elizabeth Yoho temporary total disability benefits, and she has continued to receive the same continuously through the present time. On December 1, 1981, Elizabeth Yoho filed suit in the Circuit Court of Marshall County against Triangle in a *Mandolidis*[1] action. Although it is not apparent from the record, we note that she received a substantial settlement in that action.

On April 5, 1982, a year after her accident, Elizabeth Yoho's employment with Triangle was terminated pursuant to the provisions of a collective bargaining agreement as a result of her unavailability for work over the preceding twelve-month period.

Elizabeth Yoho filed her original complaint in this action on May 12, 1982, alleging that she was the victim of a retaliatory discharge, that the contractual provision under which she was discharged violated West Virginia public policy, and that Triangle's action in discharging her constituted an intentional infliction of emotional distress. Triangle moved to dismiss for lack of subject matter jurisdiction on account of federal pre-emption and failure to state a cause of action. Two years later, but prior to any decision on Triangle's motion, plaintiff moved to amend her complaint. The amended complaint alleged a violation of public policy, a discriminatory discharge in violation of W.Va.Code § 23–5A–1 (1981) and intentional infliction of emotional distress. The circuit court held a hearing on the motion to amend, and soon thereafter entered an order denying the motion to amend and granting the motion to dismiss. Elizabeth Yoho now appeals both rulings to this Court.

I.

We address first whether the trial court's denial of Elizabeth Yoho's motion to amend was proper. In denying the plaintiff's motion, the court stated that: (1) the proposed amendment alleged new causes of action that were not based on newly discovered evidence or information; (2) Triangle would be prejudiced by the proposed amendment; and (3) the new cause of action alleged in the proposed amendment did not meet the requirements of Rule 15(c) for the same to relate back to the original complaint, and, accordingly, the new causes of action would be barred under the statute of limitations. We disagree. Elizabeth Yoho's first complaint alleged a retaliatory discharge in violation of West Virginia common and statutory law, a violation of the public policy of the State of West Virginia, and the intentional infliction of emotional distress. Her second complaint stat-

---

1. *Mandolidis v. Elkins Industries, Inc.,* 161 W.Va.   695, 246 S.E.2d 907 (1978).

ed substantially the same causes of action, but eliminated references to the collective bargaining agreement.[2] By doing so, she effectively eliminated her union (Local 1051) as a defendant. The amended complaint also modified the ad damnum clause by asking for greater damages, and deleted her demand for declaratory relief, insurance benefits, and reinstatement to her previous position. The theories of recovery and the facts relied upon remained essentially the same.

Rule 15(a) of the West Virginia Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires." This Court has read that provision to allow liberality in the consideration of a party's right to amend a pleading. *See* syl.pt. 6, *Cotton States Mut. Ins. Co. v. Bibbee,* 147 W.Va. 786, 131 S.E.2d 745 (1963). Because there were only minor changes made in the amended complaint in this case, it is difficult to see how the defendants would have been prejudiced by the amendment. We, therefore, hold that the trial court's refusal to grant leave to amend the complaint was an error. Nevertheless, for the reasons which follow, we hold the error to be harmless.

## II.

Turning to the substance of the amended complaint, the trial court granted Triangle's motion to dismiss on the grounds that Ms. Yoho's claim was pre-empted by federal labor law as inextricably intertwined with the interpretation of Article VI of the collective bargaining agreement.[3] For the reasons set out below, we find that this was also an error.

In a recent case, the United States Supreme Court summarized the law of federal pre-emption of labor issues as follows: "[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between parties in a labor contract, that claim must either be treated as a § 301 claim ... or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206, 221 (1985). The Supreme Court also noted, however, that not all labor disputes are pre-empted by Section 301:

> Clearly § 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law. In extending the pre-emptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.

471 U.S. at 212, 105 S.Ct. at 1912, 85 L.Ed.2d at 216.

In the case before this Court, Elizabeth Yoho's state law claim is not substantially dependent upon analysis of the terms of her collective bargaining agreement and, therefore, falls into that category of cases which Congress did not intend to pre-empt.

**2.** This action apparently was in response to the decision of the United States District Court for the Southern District of West Virginia in *Morris v. Owens-Illinois, Inc.,* 544 F.Supp. 752 (S.D.W.Va.1982), which held that where actions of an employer in discharging an employee were inextricably intertwined with the grievance procedure of the collective bargaining agreement, the employee's state tort claim for intentional infliction of emotional distress was pre-empted by federal labor law. 544 F.Supp. at 757. Deleting reference to the collective bargaining agreement was unnecessary in light of our decision that her state law cause of action is not pre-empted, as discussed below. If the action were subject to pre-emption by federal labor law, failure to refer to the collective bargaining agreement in the complaint would not prevent pre-emption. *See, e.g., Olguin v. Inspi-*

*ration Consol. Copper Co.,* 740 F.2d 1468, 1472 (9th Cir.1984).

**3.** Article VI provides, in pertinent part:

Article VI
SENIORITY

Section 1. Seniority is defined as the relative status of employees with respect to length of continuous service with the Company.
Section 2. Continuous service with the Company is computed from the last date of hiring and shall be broken by:

. . . .

(F) Layoff for lack of work or other reason for a continuous period in excess of one (1) year for employees with less than five (5) years seniority at the time of such layoff.

The parties agree that Triangle's conduct was consistent with the terms of the collective bargaining agreement, but disagree on matters of state law.

The distinct and separate nature of a claim arising under a collective bargaining agreement and a tort claim arising from a violation of state public policy led the United States Supreme Court of Appeals for the Tenth Circuit to hold, in *Peabody Galion v. Dollar,* 666 F.2d 1309 (1982), that an action by employees laid off on "workman's compensation leave" was not pre-empted by federal labor law. In that case, the employees were laid off pursuant to a provisions in a collective bargaining agreement that covered re-assignment in case of disability or handicap as a result of injury or illness. The contract provided that if an employee disabled or handicapped by an occupational illness or injury could not be placed within certain guidelines, he would be placed on leave until such time as he might be placed. Thirty-four employees brought suit under a provision of Oklahoma law which, like W.Va.Code § 23–5A–1, authorized an action for damages against an employer who discharged an employee for filing a workers' compensation claim. *Id.* at 1312. The Tenth Circuit observed that the conduct at issue—discharge for pursuit of workers' compensation claims—is not regulated by the National Labor Relations Act, because it is unrelated to union organization or collective bargaining, *Id.* at 1316, and that workers' compensation is preeminently a matter of state concern. *Id.* at 1317. *Cf. New York Telephone Co. v. New York State Dept. of Labor,* 440 U.S. 519, 539–40, 99 S.Ct. 1328, 1340–41, 59 L.Ed.2d 553, 568 (1979) (state unemployment compensation law providing benefits to striking workers not pre-empted). Because the likelihood of frustration of national labor policies was deemed minimal, the court overturned a grant of summary judgment in favor of the employer and allowed the action to proceed in state court. *Id.* at 1324.

Similarly, in *Garibaldi v. Lucky Food Stores, Inc.,* 726 F.2d 1367 (9th Cir.1984), the Ninth Circuit Court of Appeals held that a suit alleging wrongful termination in violation of state public policy was not pre-empted. There the employee alleged that he was discharged because he reported a shipment of adulterated milk to health officials after his supervisors ordered him to deliver it. *Id.* at 1374.

We also find persuasive the case of *Messenger v. Volkswagen of America, Inc.,* 585 F.Supp. 565 (S.D.W.Va.1984), where the United States District Court for the Southern District of West Virginia, in a case strikingly similar to the one at bar, held that a plaintiff alleging that his employment was wrongfully terminated on account of his pursuit of West Virginia workers' compensation benefits, in violation of West Virginia law and public policy, was not pre-empted by federal labor law or barred by binding arbitration provisions of the collective bargaining agreement. 585 F.Supp. at 570. We agree with the reasoning of these cases and hold that Elizabeth Yoho's complaint was not pre-empted by Section 301 of the Labor Management Relations Act.

In the case before this Court, Elizabeth Yoho's state law claim is not dependent upon analysis of the terms of her collective bargaining agreement and, therefore, falls into that category of cases which Congress did not intend to pre-empt. The parties agree that Triangle's conduct was consistent with the terms of the collective bargaining agreement, but disagree on matters of state law.[4] We, therefore, find

---

**4.** This circumstance alone renders arbitration a meaningless remedy in this case. Under the terms of the collective bargaining agreement the arbitrator only had jurisdiction to:

> [I]nterpret, apply or determine compliance with the provisions of this Agreement or of any agreement made supplementary hereto and approved in the same manner as this Agreement, and to render decision or award

thereof, but shall not have jurisdiction to add to, or subtract from or modify, or alter in any way, any of the terms of such agreement. Because the parties disagreed only on matters of state law the arbitrator had no jurisdiction to resolve the dispute. Normally, a plaintiff must exhaust the grievance and arbitration procedures in the collective bargaining agreement before he can pursue his claim in the courts.

that the trial court's ruling on the issue of pre-emption was in error.

### III.

■ Despite its error in finding federal pre-emption, the trial court was correct in dismissing the plaintiff's tort claim for intentional infliction of severe emotional distress. The intentional infliction of severe emotional distress is a relatively recent tort, recognized in this State in syl.pt. 6 of *Harless v. First National Bank in Fairmont,* 169 W.Va. 673, 289 S.E.2d 692 (1982): "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and if bodily harm to the other results from it, for such bodily harm." The firing of Elizabeth Yoho involved no extreme or outrageous conduct. It was not the result of a wanton act by Triangle, but was instead a requirement of the parties' collective bargaining agreement. *See* n. 3, *supra.* The appellant's absence from work for a continuous period in excess of one year following her work-related accident mandated a break in the appellant's seniority by operation of the collective bargaining agreement.[5] Merely following the mandate of the collective bargaining agreement is not extreme or outrageous conduct, and we, therefore, find Elizabeth Yoho's tort action to be groundless.

### IV.

■ The trial court was also correct in holding that the contract provisions which terminated Elizabeth Yoho's seniority were not contrary to the public policy of the State of West Virginia. It is true that public policy will not allow an employer to discharge an employee because he has filed a workers' compensation claim against the employer. Syl.pt. 2, *Shanholtz v. Monon-*

gahela Power Co., 165 W.Va. 305, 270 S.E.2d 178 (1980). Further, the Court cannot help but feel sympathy for a woman who suffered a physically and emotionally painful injury which caused her to be off work for the last twelve months, and finds that it is now mandated by the terms of her collective bargaining agreement that her employer dismiss her. Nevertheless, we feel it would be a mistake to extend public policy to cover Ms. Yoho's case.

■ The power to declare an action against public policy is a broad power and one difficult to define. "No fixed rule can be given to determine what is public policy. (citations omitted). It is sometimes defined as that principle of law under which freedom of contract or private dealings are restricted by law for the good of the community—the public good." *Higgins v. McFarland,* 196 Va. 889, 894, 86 S.E.2d 168, 172 (1955). Nevertheless, despite the broad power vested in the courts to determine public policy, we must exercise restraint when we use it.

> The right of a court to declare what is or is not in accord with public policy does not extend to specific economic or social problems which are controversial in nature and capable of solution only as the result of a study of various factors and conditions. It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community so declaring. *Mamlin v. Genoe,* 340 Pa. 320, 325, 17 A.2d 407, 409 (1941).

An issue which is fairly debatable or controversial in nature is one for the legislature and not for this Court.

■ Seniority is a relative factor. It is a competition among employees. Giving

---

See, e.g., *Taylor v. St. Regis Paper Co.,* 560 F.Supp. 546, 548 (C.D.Cal.1983). Nevertheless, where the agreement requiring arbitration fails to provide the arbitrator with the jurisdiction to hear the dispute, the plaintiff may disregard the arbitration process and proceed to adjudicate his claim in a court of competent jurisdiction.

5. Because nothing in the collective bargaining agreement provided for a situation in which an employee could continue employment without accruing seniority, a break in seniority under Article VI was tantamount to a termination. Recognizing that circumstance, Triangle notified the appellant by letter that her employment with the company was terminated.

more seniority to one takes away seniority from others. While this Court has consistently fought to aid the injured employee, we will not go so far as to give an advantage to the injured employee over the other employees. It seems logical and fair that the union and Triangle would put a cap on the accrual of seniority when an employee had been gone for over a year. During the year that he was gone the absent employee would not be learning any new job skills or keep up with the current industry practices. It is easy to see how the union and Triangle agreed that the employee who stayed on the job for a longer time was more worthy of promotion and the other benefits of seniority than the employee who was out for a substantial period of time.

Certainly the evil in this case (if there is one) is not so great that we feel compelled to intrude. The issue being debatable, we leave it for the legislature to decide. We, therefore, hold that the contract provision which mandated the termination of Elizabeth Yoho's seniority was not contrary to the public policy of the State of West Virginia.

### V.

■ The plaintiff's complaint also alleges that Triangle violated Code § 23–5A–1 (1981) when it discharged her. Section 23–5A–1 provides:

> No employer shall discriminate in any manner against any of his present or former employees because of such present or former employee's receipt of or attempt to receive [workers' compensation benefits].

This section does not appear applicable to the present case. Triangle's action was mandated by a facially neutral provision of the collective bargaining agreement.[6] Elizabeth Yoho was fired because she was unavailable for work for twelve months. Although she was receiving workers' compensation benefits, she would have been terminated just as quickly under the collective bargaining agreement if she had never applied for those benefits. Because there was no discriminatory conduct in this case, § 23–5A–1 is not applicable.

For the reasons stated above the decision of the Circuit Court of Marshall County is affirmed.

Affirmed.

McGRAW, Justice, dissenting:

I dissent emphatically, albeit belatedly, to Parts III, IV and V of the majority opinion. An employer cannot defend wrongful or discriminatory employment practices, proscribed by statute, on the basis of provisions contained in a collective bargaining agreement. A union contract cannot abrogate statutory or public policy rights providing protection against discharge due to work-related disability. *See Woodruff v. Board of Trustees,* 173 W.Va. 604, 319 S.E.2d 372 (1984); *see also Robinson v. Lorillard Corporation,* 444 F.2d 791 (4th Cir.1971); *Judson Steel Corporation v. Workmen's Compensation Appeals Board,* 22 Cal.3d 658, 150 Cal.Rptr. 250, 586 P.2d 564 (1978).

For this reason, I respectfully dissent.

---

**6.** Although it would be possible to state a cause of action under § 23–5A–1 if a facially neutral provision such as the one in this case were discriminatorily applied, as, for example, if Triangle enforced the provision only against employees who received workers' compensation benefits, no such allegation was made in this case.